■ CAROLINE LA RUSSO, Individually and as Administratrix of the Estate of MICHAEL LA RUSSO, Deceased, et al., Appellants, v NATHAN POLLACK, Respondent. — In a medical malpractice action, plaintiffs appeal (1) from a judgment of the Supreme Court, Nassau County (Murphy, J.), entered January 3, 1980, which is in favor of defendant, after a jury trial, and (2) from an order of the same court, entered August 13, 1980, which denied their motion to set aside the judgment. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial granted, with costs to abide the event. Appeal from the order dismissed, as academic, in light of the determination on the appeal from the judgment. Defendant, in the course of elective low back surgery he was performing on Michael La Russo, pursuant to his preoperative diagnosis of a herniated vertebral disk, encountered an unprecedented anomaly. This was a bifurcation of the nerve root exiting from the foramen between lumbars 4 and 5, by way of an accessory sheathed branch which descended towards, but did not join, the exiting sacral nerve root next below and re-entered the core of the spine through the foramen between lumbar 5 and sacral 1. He severed this anomalous nerve root branch because (he said) his overriding concern was to free adherent nerve roots in the area to restore necessary mobility to them, and the nerve anomaly was so situated that it was a tether which prevented him from doing so. Although defendant testified that this was an "agonizing decision, [made] after [Mr. La Russo was on the operating table] two or three hours" and that "it had to be cut regardless of whether it had nerve fibers or not," the fact that he severed the nerve tissue was not mentioned in his operating report, and his sole description of the tissue, on its being sent to the pathologist, was that it was "tissue from [the] back". Thereafter, later the same day, Mr. La Russo suffered a paralysis of the muscles of the left foot, and defendant essentially conceded that this was due to

the severance of the anomalous nerve. It is nevertheless defendant's position, as expressed by his medical expert witness, that since fusion of the lower lumbar vetebrae to the sacrum was necessary because of the degeneration of the disks in that area, the failure to sever the anomaly would have "entomb[ed] the pathology [of the adherence of the nerve roots] * * * as it were, sealing up the disease." Further, the expert testified that it was necessary for defendant "to free these roots [even though] * * * he must have known that there was nerve tissue in that branch, and * * * that there was going to be a functional loss." Not surprisingly, the testimony of the plaintiffs' orthopedic expert was diametrically opposed to that offered on behalf of the defendant. In our view, the unfair, prejudicial, and inflammatory nature of the remarks made in defendant's summation regarding the plaintiffs' experts necessitates a new trial. Defense counsel stated, in effect, that since the plaintiffs' two medical experts were being paid by plaintiffs to testify, their counsel may well have stated to one of them "I paid the thousand, you voice my theories", and that the other was a "pro" not in the sense of medical expertise, but in being "the best doctor money could buy". The highly inflammatory nature of these and other related remarks requires a new trial under the facts of the instant case (see *Taormina v Goodman,* 63 AD2d 1018). Gibbons, J. P., Gulotta, O'Connor and Boyers, JJ., concur.