■ BEN BERMAN, Appellant, v HUDSON BERGEN TRUCKING CO., INC., et al., Respondents. — In a negligence action to recover damages for personal injuries, plaintiff appeals, as limited by his brief, from so much of a judgment of the Supreme Court, Nassau County (Pantano, J.), dated April 14, 1982, as, after a jury trial on the issue of liability only, attributed 90% of the fault which caused the accident to plaintiff and attributed 10% of said fault to defendants. Judgment reversed insofar as appealed from, on the law and as a matter of discretion, and a new trial granted, with costs to abide the event. Plaintiff brought this action to recover damages for injuries allegedly sustained when his automobile was struck in the rear by a truck owned by defendant Hudson Bergen Trucking Co., Inc., and driven by defendant Armand Terzi. At trial, plaintiff claimed that he had been stopped at a traffic light for approximately 20 seconds when his vehicle was struck by the truck. Defendant Terzi testified that plaintiff had suddenly moved into his lane before the vehicles reached the intersection and claimed that the accident was unavoidable. In our view, unfair and prejudicial tactics employed by defendants' attorney to divert the jury's attention from the issues at trial, by suggesting that plaintiff and his attorney were hiding vital documents, require reversal and a new trial (see *La Russo v Pollack,* 88 AD2d 584). During plaintiff's direct testimony, his attorney offered a so-called MV 104 motor vehicle accident report into evidence which plaintiff claimed to have filed with the Department of Motor Vehicles. Defense counsel's objection to the admission of the report was sustained by the trial court on the ground that the presented copy was not certified as having been filed with the Department of Motor Vehicles. Defense counsel then recalled plaintiff as a hostile witness. During a sidebar conference relating to another matter, defense counsel, by way of making an offer of proof, asked plaintiff whether he had discussed an MV 104, filed by defendants, with his attorney. Plaintiff responded that such a discussion may have taken place. Defense counsel then called upon his adversary to produce a copy of defendants' MV 104. Plaintiff's attorney responded that he had no such copy. The jury was recalled, and defense counsel was allowed to again demand, in front of the jury, that plaintiff's attorney produce a copy of defendants' MV 104. The trial court then permitted defense counsel to examine his adversary, in the jury's presence and with plaintiff on the witness stand, concerning the question of whether plaintiff's attorney had a copy of defendants' MV 104 before

the trial. The trial court also allowed defense counsel to ask plaintiff's attorney whether he had demanded a copy of defendants' MV 104 from the Department of Motor Vehicles. The trial court erred in allowing defense counsel to examine plaintiff's attorney, who was not a sworn witness. Moreover, the colloquy initiated by defense counsel was irrelevant to any issue at trial. Counsel's motive in raising these questions is shown by his remarks during summation: "This document that was waived in the air and offered in evidence and properly rejected, was I going to ask him questions about that MV 104? That led to something else. What about the MV 104 filed by the defendants? There was some sort of discussion took place [*sic*] with regard to that document and ultimately it was never produced, even though I called for it. Well, can you imagine preparing a man for a trial without having all the relevant documents before you or discussing the case? There may have been something in the MV 104 which would absolutely contradict any contentions submitted by plaintiff in this case. So that was that". Defendants thereby claimed that plaintiff was suppressing an important document when, in fact, they themselves had prepared the document in question. This tactic was also employed when defense counsel demanded a copy of the retainer agreement between plaintiff and his attorney in the presence of the jury. The retainer agreement was likewise irrelevant to any issues at trial. Since plaintiff's attorney understandably did not happen to have a copy of the agreement in his possession, defense counsel again succeeded in implying that his adversary was hiding something, despite the fact that the trial court eventually sustained plaintiff's attorney's objection to his adversary's demand. Thirdly, defense counsel improperly examined plaintiff concerning plaintiff's employer's failure to comply with a subpoena for plaintiff's work records. Plaintiff was employed as a sales manager. He was not an officer of his employer. Hence, there was no showing that he was responsible for compliance with the subpoena, and the fact that the subpoena was apparently not complied with should have been taken up outside of the presence of the jury. Absent a good-faith basis for a belief that plaintiff was responsible for supplying the records at trial, this line of inquiry was improper impeachment material. Although the line of inquiry was abandoned after plaintiff's attorney's objection, its effect, especially in view of the other incidents, was to further suggest that plaintiff was suppressing important documents. The prejudice created by the foregoing incidents cannot be ignored and we therefore grant a new trial. We further note that in summation, defense counsel stated that: "Until recently, the slightest fault on the part of plaintiff would have him out of court today". Since this is a comparative negligence case there was no excuse for such a statement which was clearly aimed at prejudicing the jury against plaintiff by implying that he was the fortuitous beneficiary of a legal fad. Gibbons, J. P., Gulotta, O'Connor and Niehoff, JJ., concur.