■ BERNARD WEINBERGER, Individually and as Father and Natural Guardian of ALEXANDER WEINBERGER, an Infant, Appellant, v CITY OF NEW YORK et al., Respondents. — In a negligence action to recover damages for personal injuries, etc., plaintiff appeals, on the ground of inadequacy, from so much of a judgment of the Supreme Court, Queens County (Goldstein, J.), entered January 20, 1982, as awarded plaintiff Alexander Weinberger the principal sum of $200,000 and plaintiff Bernard Weinberger the principal sum of $15,000. Judgment reversed, insofar as appealed from, on the law, with costs, and new trial granted with respect to damages only. Plaintiff Alexander Weinberger, who was a student in the woodworking shop of Hillcrest High School, suffered a six-inch fracture of the skull and other injuries as the result of being struck by a steel rod propelled from a lathe which was being operated at high speed by the teacher in charge of the shop. An emergency craniotomy was thereafter performed to elevate the comminuted bones which were impinging upon brain tissue and also to evacuate a large hematoma. At the damage portion of the bifurcated trial of this action, one of the essential issues was the existence and extent of the alleged brain damage sustained by the infant plaintiff. We determine that the conduct of defendants' counsel during trial was so prejudicial as to require reversal and a new trial on the issue of damages, even though many objections to such conduct were sustained and many curative instructions were issued by the trial court to obviate such

errors. One area of misconduct was the interjecting by defense counsel of unsworn statements of personal knowledge of the facts of the case (see Code of Professional Responsibility, DR 7-106 [C] [3]). The following colloquy, which occurred during examination of defendants' medical expert, clearly highlights his misconduct: "Q And would this be significant to you, Doctor, the fact that he [infant plaintiff] would be in the courtroom throughout this proceeding and that he would be doing a puzzle with his wife during recesses? [Plaintiffs' counsel]: I object to that * * * [Defendants' counsel]: I saw it. YOu [sic] want me to take the stand and testify: THE COURT: * * * You may have seen it but we have no testimony on that score * * * [Defendants' counsel]: I observed — THE COURT: The objection must be sustained". Subsequently, during the course of defendants' summation wherein defense counsel was discussing the testimony of Alexander Weinberger's wife, the following colloquy took place: "[Defendants' counsel] * * * I observed her throughout this proceeding. She knows what goes on. She knows when to smile. She knows when things are going wrong. I saw her facial expressions. I saw them both together doing a crossword puzzle the other day — [Plaintiffs' counsel]: I'll object to this. THE COURT: * * * I don't like to stop you. The crossword puzzle is not in evidence and you are not a witness. [Defendants' counsel]: I should have grabbed the newsppaper [sic] and put it in evidence". Defense counsel further represented himself, in his status as an Assistant Corporation Counsel, as a guardian of the public weal (cf. *People v Tassiello*, 300 NY 425, 430), and informed the jurors that, as his fellow citizens, they had a "sworn duty" to prevent the city from being "ripped off" since "we are all together in this". In addition, a series of unfair and inflammatory comments were made by defendants' counsel concerning plaintiff's expert economist. These remarks concerned the fact that the expert was a professor at the City University's Graduate School of Business and thus was a city employee as well as a paid professional witness. During the course of his summation defense counsel stated: "You know, teaching don't [sic] pay too much. He needs money. Look * * * he had to make thirty-five hundred dollars here. That's part of the building. I don't know how ethical it is". An argument in summation that an expert is not to be believed because he was paid to testify has been held to be serious error (*La Russo v Pollack*, 88 AD2d 584; *Caraballo v City of New York*, 86 AD2d 580; *Taormina v Goodman*, 63 AD2d 1018). Finally, defendants' counsel's repeated attacks in his summation upon the integrity of plaintiff's counsel, which remarks were based upon nothing but rhetoric and the irrelevant fact that plaintiff's counsel was a member of a large, well-known law firm, were also error. In his initial remarks, he stated: "Plaintiff ['s lawyer], he has a job to do. He is an assistant partner of a very large law firm [naming it], whose job it is to build up big cases". Defense counsel then proceeded to stress this idea of "build up" with some 40 variants of the same theme, e.g., "buildup", "building process", "build it up, build it up", "building this big case", and culminating with the following: "You are not here to build up [plaintiff's law firm]. Don't be swayed by the enormous law firm * * * that went to the great, great trouble of building up this great thing. Remember that. [Plaintiff's trial counsel], he's their best lawyer". Such a personal reference to plaintiff's attorneys and trial counsel, with its unsubstantiated implicit charge of subornation of perjury, cannot allow us to rule out the strong possibility that such remarks influenced the verdict (see *Caraballo v City of New York, supra*). Gulotta, J. P., O'Connor, Weinstein and Bracken, JJ., concur.