1998-NMSC-032

965 P.2d 917

**In the Matter of U S West Communications, Inc.'s Introduction of its Integrated Services Digital Network,**

**U S WEST COMMUNICATIONS, INC., a Colorado corporation, Petitioner,**

v.

**NEW MEXICO STATE CORPORATION COMMISSION, Respondent,**

and

**MCI Telecommunications Corporation, AT & T Communications of the Mountain States, Inc. and Technology Industries Association, Intervenors–Respondents.**

No. 23856.

Supreme Court of New Mexico.

Sept. 15, 1998.

Montgomery & Andrews, P.A., Thomas W. Olson, Andrew S. Montgomery, Santa Fe, James H. Gallegos, U S West Communications, Inc., Denver, CO, for Petitioner.

Tom Udall, Attorney General, David M. Kaufman, Assistant Attorney General, Santa Fe, for Respondent New Mexico State Corporation Commission.

Levin & Vance, P.A., Richard H. Levin, Albuquerque, for Intervenor–Respondent MCI Telecommunications Corporation.

Steven Asher, Santa Fe, Maria Arias–Chapleau, Michel Singer, Denver, CO, for Intervenor–Respondent AT & T Communications of the Mountain States, Inc.

Cohen & Cohen, P.A., David S. Cohen, Jill Z. Cooper, Santa Fe, for Intervenor–Respondent Technology Industries Association.

## OPINION

FRANCHINI, Chief Justice.

{1} U S WEST Communications, Inc. (US West) removed this action from the New Mexico State Corporation Commission (Commission) and seeks review of the Commission's order regarding US West's application to make a new telecommunications service known as Integrated Services Digital Network (ISDN) generally available to its New Mexico customers. We address the following issues:

1) whether judicial review at this time is inappropriate under the doctrines of ripeness and exhaustion of remedies or under the principle of comity, given that US West has failed to seek certain waivers available to it under the Commission's order;

2) whether there is sufficient evidence in the record regarding the demand for ISDN service and the cost of providing such service to support the ISDN rates prescribed by the Commission; and

3) whether the rates the Commission established for ISDN service in New Mexico would result in an unconstitutional taking of US West's property without just compensation.

We conclude that the matter is appropriate for judicial review, and, accordingly, we reach the merits in this case. On the merits, we determine that the rates set by the Commission are adequately supported by the record, and we also determine that US West has

not met its burden of proving an unconstitutional taking of its property. Therefore, we deny US West's request that the Commission's order be set aside as unlawful.

*FACTS AND PROCEDURAL POSTURE*

{2} The basic facts underlying this removal are not in dispute. US West is a Colorado corporation that provides telecommunications services, including local exchange telephone service, in areas throughout New Mexico. As such, US West is subject to regulation by the Commission. N.M. Const. art. XI, § 7 ("The commission shall have power and be charged with the duty of fixing, determining, supervising, regulating, and controlling all charges and rates of ... telephone ... companies."). On October 30, 1995, US West filed a letter of application with the Commission requesting authorization to amend its Exchange and Network Services Tariff to allow US West to introduce ISDN technology in New Mexico as a tariffed service available to all of its New Mexico customers rather than simply on the limited, case-by-case basis it was providing ISDN at that time. With its application, US West filed tariff pages setting forth the rates, terms, and conditions under which it proposed to offer ISDN service.

{3} ISDN is a telecommunications technology that provides digital instead of analog connectivity for the transport and delivery of voice, data, and video signals. The result is improved signal quality. Additionally, by providing multiple concurrent channels on a single pair of wires, ISDN enables a copper telephone line that previously carried only one transmission to carry as many as three separate transmissions simultaneously. Although ISDN technology has been available for the past decade, it is only in the last few years, as a result of an increase in the use of the personal computer and digitized communications, that demand for the service has grown significantly.

{4} Soon after US West filed its application, the Commission, pursuant to its Notice of Hearing and Procedural Order (Procedural Order), permitted intervention by the City of Albuquerque, American Communication Services of Albuquerque, Inc., AT & T Communications of the Mountain States, Inc. (AT & T), MCI Telecommunications Corporation (MCI), and Technology Industries Association (TIA), a consortium of New Mexico high-technology companies. The Procedural Order provided for submission to the Commission of direct and rebuttal testimony prior to the hearing, and the Commission received voluminous filings in this manner. Following these submissions, on February 7–9, 1996, and again on February 19–20, 1996, the Commission heard live testimony, during which time each of the persons who had submitted direct or rebuttal testimony to the Commission appeared under oath to affirm his or her filed testimony. The Commission took administrative notice of all such testimony, and each witness had the opportunity to give additional testimony and was available for cross-examination. At the hearings, the Commission also received public comments from several individuals, and over the span of the public comment period, members of the public sent scores of letters and e-mails to the Commission expressing interest in deployment of ISDN technology in New Mexico.

{5} On May 13, 1996, the Commission entered its "Findings of Fact, Conclusions of Law and Order" (Order). The Order required US West to make ISDN service available within thirty days "to all customers served by central offices located in Albuquerque, Santa Fe, Las Cruces, and in selected rural central offices in which ISDN can also be reasonably deployed in such time frame[.]" It further required that, within sixty days, US West "shall file a proposed deployment schedule for each of the central offices in the remainder of the State[.]" The Order required US West to "make ISDN service available throughout its New Mexico territory by July 1, 1997", but provided that if US West "is unable to meet the timing and scope" of the these deployment requirements in regard to a particular central office, "US West may petition the Commission to waive the requirement as to that central office[.]" Additionally, the Order required: (1) that US West provide ISDN Single Line Service (ISDN service) with unlimited customer usage at a monthly rate of $75.97 for business users and $40.86 for residential users; (2)

that, within fifteen days, US West advise the Commission of the procedures it would utilize for monitoring and reporting demand for ISDN service in New Mexico; and (3) that, within six months, US West file with the Commission a "properly developed" cost study "using New Mexico-specific data" for ISDN service in New Mexico. The Order also provided that, following the Commission's review of the cost study, "the rates established herein may be revised if appropriate."

{6} Subsequent to the entry of the Order, US West filed a motion for rehearing, which the Commission denied. US West then petitioned the Commission for removal of the case to this Court pursuant to Article XI, Section 7 of the New Mexico Constitution, which provides for review by this Court of orders of the Commission. The Commission granted US West's petition for removal, and we now affirm the Order.

*DISCUSSION*

## WHETHER THIS CASE IS APPROPRIATE FOR JUDICIAL REVIEW

{7} As a preliminary matter, we address the Commission's contention that this case is not yet ripe for judicial review because US West has failed to exhaust its administrative remedies. The Commission argues that US West, "before challenging the potential denial of a potential waiver request through removal to this Court[,]" must first exhaust the administrative remedy of seeking waivers from the Commission for particular central offices at which US West cannot meet the timing or scope of the Order's deployment requirements. We think this argument misconstrues US West's petition for removal. US West's petition for removal did not challenge "the potential denial of a potential waiver request" under the Order, but rather attacked the Order itself as "unlawful and therefore unenforceable." In any event, the Commission's argument is without merit because it essentially conflates the doctrines of ripeness and exhaustion of remedies, which is a misreading of Article XI, Section 7 and our prior case law on actions removed from the Commission. Ripeness is applicable to such actions; exhaustion is not.

■ {8} As applied in the context of an administrative proceeding, the doctrine of ripeness serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *see also Local 781 Int'l Ass'n of Fire Fighters v. City of Independence*, 947 S.W.2d 456, 461 (Mo.Ct.App. 1997) (characterizing ripeness as a " 'tool' of the court, which is used to ... [avoid] rendering an advisory opinion on some future set of circumstances"); *City of Las Cruces v. El Paso Elec. Co.*, 1998–NMSC–006, ¶ 18, 124 N.M. 640, 954 P.2d 72 ("We avoid rendering advisory opinions."). In *New Mexico Industrial Energy Consumers v. New Mexico Public Service Commission*, 111 N.M. 622, 636, 808 P.2d 592, 606 (1991), this Court applied the doctrine of ripeness, stating:

> We are not in the position where we can evaluate the decisions made in the hearing as they affect rates, because the Commission has not yet determined rates. This question remains open before the Commission, and we will not act upon it until the Commission has made a final determination and considered all of the evidence.

In that case, the Public Service Commission termed its order a "Final Order", but this Court concluded that it was merely "a threshold determination pending the outcome of the prudence and rate hearings[.]" *Id.* at 634, 808 P.2d at 604; *cf. Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 236, 824 P.2d 1033, 1038 (1992) ("[O]ur case law makes it clear that the term 'finality' is to be given a practical, rather than a technical, construction."). Here, in contrast, after extensive hearings, the Order explicitly established the rates US West could charge for ISDN service, and there is no suggestion that any further action by the Commission or US West was necessary before those rates be-

came applicable to US West. As such, the Order is ripe for our review. *Cf. Compass Adjusters and Investigators, Inc. v. Commissioner of Tax. and Finance*, 197 A.D.2d 38, 610 N.Y.S.2d 625, 627 (N.Y.App.Div.1994) (tax issue ripe for judicial review where Commissioner's letter in response to plaintiffs' request for a legal opinion expressed Department's definitive position on the issue).

■ {9} Under the exhaustion of administrative remedies doctrine, "[w]here relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993); *see also McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (describing numerous policy goals served by the doctrine). Relying on *McDowell v. Napolitano*, 119 N.M. 696, 700, 895 P.2d 218, 222 (1995), the Commission urges us to apply the exhaustion doctrine and hold that, before review in this Court is appropriate, US West must seek a waiver of the Order's deployment requirements from the Commission. The Commission's reliance on *McDowell* is misplaced. *McDowell* did not involve a removal action from the Commission. This Court has never applied the doctrine of exhaustion to such actions, and, in the face of clear, contrary language in Article XI, Section 7, we decline to do so now.

■ {10} Article XI, Section 7 provides that "[a]ny company, corporation or common carrier *which does not comply with the order of the commission within the time limited therefor*, may file with the commission a petition to remove such cause to the supreme court[.]" (Emphasis added.) Article XI, Section 7 further provides that

> in the case of failure or refusal of any person, company or corporation to comply with any order within the time limit therein, unless an order of removal shall have been taken from such order by the company or corporation to the supreme court of this state, it *shall immediately become the duty of the commission to remove such order ... to the supreme court*[.]

(Emphases added.) Thus, even if US West had not petitioned for removal in this case, US West's refusal to comply with the Order would have necessitated removal by the Commission "immediately", which we interpret to mean without further administrative action by the Commission. *See In re Southern Pac. Co.*, 37 N.M. 11, 16, 16 P.2d 402, 405 (1932) (noting that Article XI, Section 7 "gives to the Supreme Court exclusive jurisdiction" over enforcement of the Commission's orders); *cf. McClellan v. Pennsylvania Pub. Utility Comm'n*, 159 Pa.Cmwlth. 675, 634 A.2d 686, 689 (1993) (exhaustion doctrine inapplicable where agency has no jurisdiction to provide appropriate relief). It is of no importance that US West initiated removal before the Commission attempted to do so; this fact merely indicates that US West did not plan to comply with the Order. *See Mountain States Tel. & Tel. Co. v. State Corp. Comm'n*, 65 N.M. 365, 370, 337 P.2d 943, 946 (1959) (holding that a "prospective refusal" on the part of a company to obey the Commission's order "is the equivalent of a failure or refusal to obey the order"). We therefore hold that when a company has refused to comply with an order of the Commission, and the case has been removed to this Court pursuant to Article XI, Section 7, the exhaustion of remedies doctrine does not apply.

■ {11} The Commission argues that, even if the doctrines of ripeness and exhaustion do not apply in this case, *McDowell* supports the proposition that this Court should choose to defer review until the Commission has rejected or approved any ("potential") waivers filed by US West because, under the principle of comity, "the interests of justice are best served by permitting the agency to resolve factual issues within its peculiar expertise." *McDowell*, 119 N.M. at 700, 895 P.2d at 222. Here, however, US West's petition for removal did not invoke the jurisdiction of this Court for the resolution of disputed factual issues, but rather sought to challenge the very lawfulness of the Order. In such cases, "[w]hen presented with an Order entered by the Commission and removed to this Court, we are mandated to decide the case on its merits." *US West*

Communications, Inc. v. New Mexico State Corp. Comm'n (In re Held Orders of US West Communications, Inc.), 1997–NMSC–031, ¶7, 123 N.M. 554, 943 P.2d 1007 [hereinafter *US West II* ]; *see also In re Southern Pac. Co.*, 37 N.M. at 16, 16 P.2d at 405 (recognizing that exclusive jurisdiction over actions removed from the Commission lies in this Court under Article XI, § 7).

## STANDARD OF REVIEW

{12} In actions removed to this Court from the Commission, " '[o]ur scrutiny ... is more exacting than that normally accorded administrative decision-making.' " *Attorney Gen. v. New Mexico State Corp. Comm'n (In re Rates and Charges of US West Communications, Inc.)*, 121 N.M. 156, 160, 909 P.2d 716, 720 (1995) [hereinafter *US West I* ] (quoting *Burlington N.R.R. v. Corporation Comm'n (In re Burlington N.R.R.)*, 107 N.M. 582, 583, 761 P.2d 855, 856 (1988)); *see also Regents of the Univ. of New Mexico v. New Mexico Fed'n of Teachers*, 1998–NMSC–020, ¶17, 125 N.M. 401, ¶17, 962 P.2d 1236, ¶17, (delineating standard of review in non-removal, administrative agency cases). "Our review[,]" however, "is not de novo." *US West I*, at 161, 909 P.2d at 721. Rather, we simply determine whether " 'it is *more likely than not* that the Commission's order is just and reasonable.' " *Id.* (quoting *In re Burlington N.R.R.*, 107 N.M. at 584, 761 P.2d at 857) (emphasis added).

{13} To uphold an order of the Commission under this standard of review, we must examine the whole record, "looking for satisfactory and substantial evidence to support the Commission's Order." *US West II*, 1997–NMSC–031, ¶7, 123 N.M. 554, 943 P.2d 1007. " '[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *US West I*, 121 N.M. at 161, 909 P.2d at 721 (quoting *Behles v. New Mexico Pub. Serv. Comm'n (In re Timberon Water Co.)*, 114 N.M. 154, 156, 836 P.2d 73, 75 (1992)). "The term satisfactory refers to the weighing procedure." *US West II*, 1997–NMSC–031, ¶7, 123 N.M. 554, 943 P.2d 1007. "Accordingly, even if the Commission's order is supported by substantial evidence, we need not uphold

it if the weight of the evidence is [to the] contrary." *Mountain States Tel. & Tel. Co. v. Corp. Comm'n (In re Rates and Charges of the Mountain States Tel. & Tel. Co.)*, 99 N.M. 1, 6, 653 P.2d 501, 506 (1982). Thus, in reviewing the record, "we acknowledge the expertise of the Commission in public utility management, but will not make any presumptions in favor of the Commission's decisions." *US West II*, 1997–NMSC–031, ¶7, 123 N.M. 554, 943 P.2d 1007.

## WHETHER THE COMMISSION'S OR- DER IS SUPPORTED BY THE RECORD

{14} US West argues that the record does not support the Order's deployment requirements and rates. US West asserts that the Order is unjust and unreasonable because the record contains *"no* adequate evidence of demand" for ISDN service in New Mexico. Whereas US West's initial application proposed deployment of ISDN service only in the limited, primarily metropolitan, areas that it deemed "economically practical", the Commission ordered US West to make ISDN service available "ubiquitously" throughout its New Mexico territory by July 1, 1997 at rates substantially lower than those initially proposed by US West. Guided by our standard of review, we determine that substantial and satisfactory evidence supports the Commission's deployment requirements and rates and that it is more likely than not that the Order is just and reasonable.

*Background Information*

{15} Some background information is necessary to understand US West's contentions regarding the adequacy of the record. For the limited areas in which US West initially sought to make ISDN service available, US West's tariff pages proposed three pricing options for its residential and business customers alike. Under the first option, the customer would pay a monthly rate of $39 plus a measured-usage charge. Under the second option, the customer would pay a monthly rate of $68, which would include up to 200 hours of usage, beyond which the customer would pay the measured-usage charge. Finally, under the third option, the customer would pay a monthly rate of $184

for unlimited usage. The prices for all three options included a number of enhanced telephone features such as Caller ID, Three-Way Calling, Call Forwarding, Busy Line/Don't Answer, and Call Transfer. These proposed rates and rate structures were the subject of a great deal of controversy.

{16} During the course of the hearings before the Commission, two settlement proposals were presented and discussed in detail on direct and cross examination. In a Memorandum of Understanding (MOU) entered into by US West, MCI, and the staff for the Commission (Staff), those parties agreed to modifications of US West's rates and rate structures as follows: the first option would remain at $39 per month plus measured usage; the second option would be reduced from $68 per month (plus measured usage after 200 hours of uncharged usage) to $50 per month (plus measured usage after 50 hours of uncharged usage), and option three, allowing for unlimited usage, would decrease from $184 per month to $75 per month. The parties, including US West, agreed that, "by any reasonable measure, the rates proposed in this Memorandum of Understanding are above cost." The MOU expressly recited, however, that MCI and Staff did not concur in or support US West's cost methodologies and analyses, but simply agreed that the proposed rates should be deemed to be above cost. Nor did the parties agree on deployment, reserving this matter "for full hearing and resolution by the Commission on issues including but not limited to deployment plans and dates and service to ISDN unserved areas." The MOU rates apparently did not include the enhanced telephone services proposed in the initial tariff pages US West filed with its application, and the new rates did not distinguish between business and residential customers.

{17} AT & T and TIA did not join in the MOU but entered into a separate Memorandum of Agreement (MOA) in which they proposed four different pairs of possible business and residential "flat" rates for unlimited usage. The highest pair of rates was $75.97 per month for business customers and $40.86 for residential customers. These two rates, $75.97 and $40.86, were derived by adding a $25 increment to US West's highest existing tariffed rates for basic, unlimited-usage, local residential and business telephone service, so that "the existing POTS [Plain Old Telephone Service] rate group differentials would be carried forward into the ISDN tariff." The $25 increment covered AT & T's estimate of US West's costs for providing ISDN service over existing copper telephone lines. Like the MOU's rates, the MOA's rates apparently did not include the enhanced services proposed in US West's initial tariff pages. The MOA also recited the identical language of the MOU regarding AT & T and TIA's belief that their suggested rates were above cost "by any reasonable measure," that they did not concur in US West's cost methodologies and analyses, and that issues of deployment were reserved for further hearing before the Commission.

*The Commission's Findings on Cost and Rates*

{18} The Commission rejected US West's cost methodology, Average Direct and Shared Residual Cost (ADSRC), finding that it "was not designed as a test [for the cost of] an individual service" and that it "does not accurately state the cost of providing ISDN." US West does not challenge these findings. US West's cost witnesses agreed that the essential test for below-cost pricing for a service is the Total Service Long Run Incremental Cost (TSLRIC). The Commission found that "the ASIC [Average Shared Incremental Cost] costs for ISDN, developed by US West as a component of its ADSRC methodology, do provide a reasonable interim approximation of the TSLRIC costs of the services." As discussed below, US West does challenge this finding.

{19} The Commission further found that the rates proposed in the MOU "are unacceptable for residential customers and may suppress demand for residential ISDN services." The Commission also found that "[i]t is in the public interest that consumers have monopoly-provided local exchange ISDN services made available to them at the lowest prices that are just and reasonable." The Commission adopted the MOA's rates of $75.97 per month for unlimited-usage busi-

ness ISDN service and $40.86 per month for unlimited-usage residential ISDN service, finding that these rates "cover US West's ASIC costs for ISDN *as calculated by US West.*" (Emphasis added.) The Commission noted: "This finding is reinforced given that Staff and AT & T found that US West has overstated its costs of providing ISDN services."

*US West's Arguments Regarding the Adequacy of the Record*

{20}    US West asserts that the record does not support the Commission's finding that its rates cover US West's ASIC costs. US West attacks the MOA's $25 increment, meant to cover AT & T's estimate of US West's ASIC costs for ISDN, as a figure that is mere "speculation" and "anything but objective." We need not address this argument, as the Commission found that its rates cover US West's own calculation of its ASIC costs. US West vigorously argues that the Commission's rates do not cover its ASIC costs, pointing to the fact that the $40.86 per month figure set by the Commission for residential use is below the confidential ASIC cost figure for monthly unlimited-usage ISDN service—business or residential—that US West identified in a proprietary exhibit submitted to the Commission. However, as US West acknowledges, basic residential telephone service has traditionally been priced below cost, being subsidized by other services. *See US West I,* 121 N.M. at 165, 909 P.2d at 725; *Mountain States Tel. & Tel. Co. v. New Mexico State Corp. Comm'n,* 90 N.M. 325, 337–38, 563 P.2d 588, 590–91 (1977) [hereinafter *Mountain States II* ].

{21}    US West does not dispute that the average of the Commission's $70.97 and $40.86 rates is higher than the confidential ASIC figure submitted by US West, but argues that "[n]othing in the record enables the Commission to determine ... that revenues from business users of ISDN—or, for that matter, from services other than ISDN—will be sufficient to compensate for the loss resulting from a below-cost residential rate." We are not persuaded by this argument. As we discuss below, it is US West's burden to prove a taking by below-

cost pricing of residential services, not the Commission's burden to disprove such a taking. Moreover, US West itself projected that the primary market for ISDN would be "business users, regardless of where it's delivered."

{22}    Apparently seeking to disavow this projection, US West points out that the Commission found that "US West has not conducted accurate and appropriate demand studies for ISDN in New Mexico" and also ·found that "the inadequacy of the measurement of demand by US West is remarkable." We note that in its order denying US West's motion for rehearing, the Commission found that "US West admitted at hearing that its market demand expectations for ISDN services were based on an informal poll of its own executives who gave their own opinions as to large institutional demand for ISDN in New Mexico. Even as to that market, there were significant omissions from the institutional list." We also note that the Commission found that, "in certain cases, US West's witnesses were a paradigm of obfuscation and evasion." The Commission further found that "[t]here was no attempt by US West to objectively quantify small business and residential demand for ISDN service." Additionally, the Commission found that "ISDN is a product that is of significant importance for economic development and education in New Mexico." Finally, the Commission noted: "For a company the magnitude of US West to propose to offer a service as important as ISDN without an appropriate investigation of demand and without a seeming comprehension of the market and the usefulness of the product is highly questionable." US West does not dispute any of these findings. *Cf. Armijo v. Via Dev. Corp.,* 81 N.M. 262, 263, 466 P.2d 108, 109 (1970) (unchallenged findings of trial court become facts in Supreme Court).

■    {23}    We do not think these findings regarding the failings of US West's demand studies aid US West's attack on the Commission's finding that its rates cover US West's ASIC costs. US West's evidence before the Commission was that the demand for ISDN services would be largely from business users, and while the Commission found US

West's demand studies to be significantly flawed, the Commission did not reject US West's demand studies "out of hand", as US West asserts. Rather, consistent with US West's recognition that ISDN "is a new service and that its uses are still developing" and US West's resulting intention "to gather demand and usage information as it deployed the service," the Commission ordered US West to conduct a further assessment of demand for ISDN and prescribed the procedures for doing so in the Order. Although the Commission clearly was of the opinion that US West had not adequately considered the residential market for ISDN, there is no suggestion in the record that the Commission disagreed with US West's conclusion that demand for ISDN would come primarily from business users, in which case the average of the above-cost business rates and the below-cost residential rates more than covers US West's ASIC costs. Under these circumstances, substantial and satisfactory evidence supports the Commission's determination that its rates cover US West's ASIC costs.

■ {24} US West also argues that the Commission's reliance on US West's ASIC cost study as an interim approximation of the TSLRIC costs of ISDN service is misplaced because the study reflected only the limited deployment of ISDN that US West contemplated in its initial application, not the ubiquitous deployment ordered by the Commission. Hence, US West contends that, for the ubiquitous deployment the Commission ordered, the record does not support the Commission's finding that its rates cover US West's costs for providing ISDN service in New Mexico. We reject this argument.

{25} US West has 71 central offices in New Mexico. US West itself initially proposed ISDN deployment in "those central offices where there is identified demand and the capability to deploy ISDN on a cost effective basis." US West's argument is grounded on the fact that it apparently based its cost figures on deployment from these particular central offices. US West, however, does not argue that its costs for providing ISDN service out of these central offices are not representative of its costs for implement-ing ISDN capabilities at its other central offices throughout the state. Nor does US West assert that there are super-structure costs or other costs uniquely associated with ISDN deployment on a broad scale rather than a limited scale. Rather, it appears that the costs associated with providing ISDN service turn on implementation at the central office level.

{26} The Order implements ISDN service at the central office level. While the Order contemplates eventual statewide deployment, the Order is clear that it is through the individual central offices that this objective is to be achieved. The Order does require US West to make ISDN service available virtually immediately "to *all customers* served by central offices located in Albuquerque, Santa Fe and Las Cruces," and in selected rural central offices. (Emphasis added.) However, that does not change the fact that the terms of the Order allow US West to obtain a waiver for *any* central office if US West "is unable to meet the timing and scope of the Commission's order on deployment *in regard to [that] particular central office.*" (Emphases added.) Hence, we find misleading US West's protestations that the Commission's "ubiquitous" deployment schedule "necessarily assumes that demand for ISDN in New Mexico is at or near 100%" and that the Order "by its plain terms requires US West to bear the investment and costs of making ISDN available to all of its customers *as if* 100% of those customers will take the service."

{27} In its order denying US West's motion for rehearing, the Commission specified that "if US West . . . can appropriately demonstrate that there is only insignificant demand for ISDN served from a particular central office, a good argument could be fashioned to support the granting of a waiver from being required to make an expensive installation at that particular central office." In light of this provision, US West's general observation that "the investment and costs required to deploy ISDN on so broad a scale [as contemplated by the Order] would be far greater than the already substantial investment and costs of a limited deployment" is an empty, irrelevant one. While the sum of US

West's costs may be arithmetically greater with each new central office in which ISDN is implemented, the waiver provision of the Order allows US West to ensure that its costs are covered for each of those offices.

{28} Under these circumstances, where US West's own ASIC cost projections served as the basis for the Commission's calculation of ISDN rates, where implementation under the Order takes place at the central office level, and where US West—through the Order's waiver provision—essentially holds the key to whether implementation takes place at each office, we think there is substantial and satisfactory evidence justifying the Commission's reliance on US West's cost figures for deployment in central offices statewide.

{29} US West contends that we should disregard the Order's waiver provision in determining whether substantial and satisfactory evidence supports the Order. Similarly, US West urges that what it terms the Order's "revisitation provision" should be of no consequence in our review. The revisitation provision requires US West to conduct "a properly developed TSLRIC study using New Mexico-specific data for ISDN ... services within six months of the date of this Order" and further provides that, "[f]ollowing review of the TSLRIC study, the rates established herein may be revised if appropriate." US West suggests that this provision and the waiver provision are nullities because "the Commission's stated willingness to consider waivers and revisitation does not distinguish the Order from any other action the Commission may take ... [since it] always has the constitutional 'power ... to change, alter or amend its orders, rules, regulations or determinations ....' " N.M. Const. art. XI, § 7. Fundamentally, US West argues that these provisions do not "cure any 'temporary' lack of evidence to support the order."

{30} As we have discussed, the Order, with its waiver provision, is supported by substantial and satisfactory evidence. Our standard of review requires us to review the Order as a whole to determine whether it is more likely than not that it is just and reasonable. We will not limit our review to only those portions of the Order that US West deems support its position. Both the revisitation provision and the waiver provision are important, integral parts of the Order. The revisitation provision is important because it recognizes that the ASIC cost figures are only an interim surrogate for TSLRIC cost figures. The waiver provision is an integral part of the Order in that it establishes that implementation of ISDN service will take place at the central office level, thereby enabling a correlation between demand for ISDN service in New Mexico and US West's costs for providing such service. The Order as a whole, including the revisitation and waiver provisions, is more likely than not just and reasonable.

{31} Finally, US West asserts that the proper method for determining adequacy of the evidence in this case is not to determine whether substantial and satisfactory evidence supports the Commission's determination that US West's costs are covered for ISDN implementation, but to determine whether the Commission had adequate evidence to quantify, in advance of its Order, the "volume of usage" of ISDN that US West's customers would demand at the Commission's set rates. Without such evidence, US West argues, "the Commission could not determine US West's requisite investment and costs, and it therefore could not determine the revenue required to cover those costs and allow a fair rate of return." US West complains that, on the present record, "it is a matter of sheer speculation whether US West will ever be compensated for its investment and costs to provide ISDN." In essence, US West would have us impose a burden of certainty on the Commission in determining that the Order will cover US West's costs for ISDN implementation in New Mexico. This proposition is impractical, disingenuous, unnecessary, and contrary to the proper allocation of the burden of proof.

{32} In *Mountain States II*, this Court observed, "It is clear from this record and from the nature of this complex business that there is no way of learning precisely what it will cost to render any particular service." 90 N.M. at 338, 563 P.2d at 591. This observation is equally applicable to this

case. US West itself, "[r]ecognizing that [ISDN] is a new service and that its uses are still developing," acknowledged before the Commission that "deployment, demand and usage data are scant." For this reason, US West proposed "to gather demand and usage information as it deployed the service ... and to modify its deployment plans and the rates, terms and conditions for providing the service as appropriate in light of the developing market for its service." Under these circumstances, it is astonishing that US West asserts that quantified "volume of usage" demand data is necessary to support the Commission's Order.

{33} In *Mountain States II*, we also observed that "[t]he rate-making function involves the making of pragmatic adjustments." 90 N.M. at 338, 563 P.2d at 591. We determined, therefore, that the Commission is not bound to the use of any single formula or combination of formulae in determining rates and that "[i]t is the result reached, not the method employed, which is controlling." *Id.* Here, where substantial and satisfactory evidence supports the result the Commission reached, we see no reason to employ the method urged by US West.

■ {34} Moreover, under the proper allocation of the burden of proof, the method urged by US West is contrary to law. It is not the Commission's duty to provide "volume of usage" demand data to disprove a taking; instead, the burden of proving that the Commission's rates will not cover US West's investment and costs is on US West. *See New Jersey Bell Tel. Co. v. State Dep't of Pub. Utilities,* 162 N.J.Super. 60, 392 A.2d 216, 222 (N.J.Super.Ct.App.Div.1978) (on question of confiscation, burden of proof rests with public utility); *cf. National Council on Compensation Ins. v. New Mexico State Corp. Comm'n,* 107 N.M. 278, 291, 756 P.2d 558, 571 (1988) (in insurance rate case, insurance company had the burden of proving the confiscatory nature of the challenged premium rates); *Pentecost v. Hudson,* 57 N.M. 7, 9, 252 P.2d 511, 512 (1953) (" 'The fundamental principle is that the burden of proof in any cause rests upon the party who, as determined by the pleadings or the nature of the case, asserts the affirmative of an issue[.]' ") (citation omitted). Having determined that substantial and satisfactory evi-

dence supports the Commission's finding that the rates set by the Commission cover US West's costs, we conclude that US West's argument is without merit.

## WHETHER THE COMMISSION'S ORDER AMOUNTS TO A TAKING

■ {35} US West suggests that "the record shows that rapid technological innovation in the telecommunications field creates a significant risk that ISDN will quickly become obsolete" and that, "[i]n light of this risk, it is particularly doubtful that demand will be sufficient, over the potentially brief lifespan of ISDN service, to permit US West to recover the investment and costs of the ubiquitous deployment that the Commission ordered." We have reviewed US West's citations to the record and, contrary to US West's negative characterization, these very citations support a very positive outlook for the future of ISDN use.

{36} US West also reprises its adequacy of the evidence arguments in asserting that the Order amounts to a taking of its property. US West contends that the below-cost residential rate of $40.86 is prima facie evidence of confiscation. US West also again asserts that the record contains inadequate evidence of demand and that it is therefore uncertain whether US West will ever be compensated for its investments and costs to provide ISDN service. For the reasons discussed above, we hold that US West has not satisfied its burden of proving that the Order is confiscatory.

## CONCLUSION

{37} Substantial and satisfactory evidence supports the Commission's Order implementing tariffed ISDN service in New Mexico. It is more likely than not that the Order is just and reasonable, and US West has not satisfied its burden of proving a taking of its property. Therefore, US West's request that the Order be set aside is denied.

{38} **IT IS SO ORDERED.**

BACA and MINZNER, JJ., concur.