805 P.2d 624

**James HERRON, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

**No. 19224.**

Supreme Court of New Mexico.

Feb. 4, 1991.

Rehearing Denied March 5, 1991.

As Amended March 6, 1991.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for petitioner.

Tom Udall, Atty. Gen., Margaret McLean, Asst. Atty. Gen., Santa Fe, for respondent.

OPINION

RANSOM, Justice.

A jury convicted James Herron on all counts under a twenty-three count indictment. He was convicted on one count of kidnapping in violation of NMSA 1978, Section 30–4–1 (Repl.Pamp.1984), and one count of conspiracy to commit criminal sexual penetration in violation of NMSA 1978, Sections 30–28–2 and 30–9–11 (Repl.Pamp. 1984). Additionally, he was convicted on twenty-one counts of second-degree criminal sexual penetration in violation of NMSA 1978, Section 30–9–11(B).[1] Two of the latter counts involved aiding and abetting and are not at issue. The court of appeals affirmed the convictions. We granted certiorari to determine whether, in light of our recent decision in *State v. Pierce*, 110 N.M. 76, 792 P.2d 408 (1990), convictions for nineteen of the twenty-one counts of second-degree criminal sexual penetration are contrary to the double jeopardy clauses of the New Mexico and United States Constitutions. N.M. Const. art. II, § 15; U.S. Const. amend. V. We affirm in part, reverse in part, and remand.

*Facts.* The victim was approached by three men in a car while walking along Central Avenue in Albuquerque late in the evening of August 1, 1987. From a previous meeting in San Gabriel Park, the victim recognized two of the car's occupants, James Herron and his uncle, Marvin Herron. She entered their car. The men drove to Marvin's house and asked the victim if she would come in for a minute.

Inside the house, Marvin repeatedly asked the victim to have sex with him and at one point offered her ten dollars in return for sex. The victim laughed and refused, stating she would not do such a thing for less than fifty dollars. Marvin later offered her fifty dollars, and the victim responded that she was not serious and again refused his offer. The victim then stated to the men that she wanted to leave.

James scoffed at her request and threw her to the floor, struck her, and threatened to kill her if she did not stop struggling. The victim was ordered to remove her clothing whereupon Marvin penetrated her vaginally while James forced her to perform fellatio on him. Marvin left the room, and James continued to have sex with the victim for a period spanning one hour until the victim, still naked, fled the house and obtained help.

At issue are Herron's conviction on nineteen counts of second-degree criminal sexual penetration for each penetration that occurred while he was alone with the victim. Those counts were supported, in large part, by the following testimony of the victim:

Question (by prosecutor): Do you recall,. specifically, the [exact] sequencing of [events]?

Answer (by victim): No.

\* \* \* \* \* \*

Question: Are you sure each of those [acts] occurred?

Answer: Positive.

Question: Do you know \* \* \* approximately how many times each act occurred?

Answer: Approximately, he penetrated me five times with his penis in my mouth, approximately five times with his penis in my vagina, approximately five times with his penis in my anus, and approximately three times with his finger in my vagina, and just once with his finger in my anus.

The victim later clarified by the term "approximately" she meant at "a minimum."

*Double jeopardy.* Herron contends that his convictions on each of the nineteen counts at issue violated the state and federal constitutional guarantees against double jeopardy because they subjected him to multiple punishment for the same offense.[2]

1. Herron was sentenced to nine years each on the twenty-two second-degree felony counts and to three years on the conspiracy count. The trial judge ordered the sentences to be served consecutively for a total of 201 years. The judge suspended 151 years for a net sentencing package of 50 years in prison and 5 years probation upon release.

2. Our courts long have held that the state and federal constitutional prohibitions against double jeopardy are of such similarity that they

Specifically, he argues that his assault should be prosecuted on an "object-orifice" theory: penetration of an orifice by a distinct object is one offense, and later penetrations of the same orifice by the same object are not separate offenses.[3] Herron's argument rests on the premise that when multiple acts are committed in close temporal proximity, they are part of a continuous process and constitute but one offense. *Crawford v. State*, 688 P.2d 347, 348 (Okla.Crim.App.1984) (where two acts of rape have occurred within a short period of time, it is part of a continuous process and constitutes only one crime). The court of appeals, on the other hand, held that each penetration, however temporally proximate, constituted a separate and distinct offense under Section 30–9–11.

In determining whether the State's charging pattern suffered from multiplicity,[4] we first must identify the appropriate unit of prosecution under Section 30–9–11. As we recently observed in *State v. Pierce*, 110 N.M. 76, 792 P.2d 408 (1990), " 'the *only* function the Double Jeopardy Clause serves in cases challenging multiple punishments is to prevent the prosecutor from bringing more charges, and the sentencing court from imposing greater punishments, than the Legislative Branch intended.' " *Id.* at 84–85, 792 P.2d at 416–17 (quoting *Whalen v. United States*, 445 U.S. 684, 697, 100 S.Ct. 1432, 1440, 63 L.Ed.2d 715 (1980) (Blackmun, J., concurring)). The issue, though essentially constitutional, becomes one of statutory construction.

Section 30–9–11 defines criminal sexual penetration as:

[T]he unlawful and intentional causing of a person * * * to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse, or the causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is any emission.

That language does not indicate unambiguously whether the legislature intended under Section 30–9–11 to create a separate offense for each penetration occurring during a continuous sexual assault. The legislative and statutory history of Section 30–9–11, as well, provide little or no guidance whether the legislature intended to punish separately multiple penetrations of the same orifice. Section 30–9–11 was enacted in 1975, during a period marked by wide-ranging reform of rape legislation. The legislature consolidated the prior crimes of rape, statutory rape, child rape, and sodomy into a single statutory section.[5] In so doing, the legislature preserved much of the operative language of the former laws. "Sexual intercourse," under the 1953 compilation, meant "penetration of the vagina of a female to any extent by the penis of a male." NMSA 1953, § 40A–9–1 (repealed 1975). Similarly, a person committed sodomy by "intentionally placing his or her sexual organ in the mouth or anus of any other * * *. Any penetration, however slight, [was] sufficient to complete the crime * * *." NMSA 1953, § 40A–9–6 (repealed 1975). We are cognizant of the rule of construction that when enacting a statute the legislature is deemed to be aware of existing statutes and judicial decisions and to have amended or enacted the statute in light thereof. *Quintana v. New Mexico Dep't of Corrections*, 100 N.M. 224, 668 P.2d 1101 (1983). However, that rule is of no utility in cases, such as the instant case, in which the issue was not decided under the former law.[6]

---

should be construed and interpreted in the same fashion. *State v. Rogers*, 90 N.M. 604, 566 P.2d 1142 (1977).

**3.** In particular, petitioner's proposed charging theory reduces the nineteen counts to "at most" five: (1) finger in vagina, (2) finger in anus, (3) penis in vagina, (4) penis in anus, and (5) penis in mouth.

**4.** We use the term "multiplicity" to describe the situation when an indictment charges a single offense in different counts.

**5.** Rape, statutory rape, rape of a child, and sodomy were criminalized under NMSA 1953, §§ 40A–9–2, –3, –4, and –6 (repealed 1975), respectively.

**6.** In *State v. Elliott*, 89 N.M. 756, 557 P.2d 1105 (1977), this Court held that three penetrations of the mouth and one of the anus constituted four sodomy violations under NMSA 1953, Section 40A–9–6 (repealed 1975). It is not clear from the opinion, however, whether these acts were separated in time or place. Moreover, the opin-

In *People v. Harrison*, 48 Cal.3d 321, 768 P.2d 1078, 256 Cal.Rptr. 401 (1989), the California Supreme Court considered the appropriateness of multiple convictions and sentences based on repeated penetrations of the same orifice with the same object. The defendant in *Harrison* was convicted of three violations under a California statute that prohibited the "penetration, however slight, of the genital or anal openings of another person, by any foreign object * * *." Cal.Penal Code § 289(a) (West 1988) (amended 1988). According to the victim, the sexual assault lasted approximately ten minutes. During that time, the defendant digitally penetrated the victim's vagina in three brief assaultive episodes that were temporally distinct in different locations within the same room.

In sweeping language the California Supreme Court affirmed defendant's convictions holding, without qualification, that each time a person causes the penetration of another he commits a separate and independent violation of Section 289: "a *new and separate* violation of Section 289 is 'completed' each time a *new and separate* 'penetration, however slight' occurs." *Harrison*, 48 Cal.3d at 329, 768 P.2d at 1082, 256 Cal.Rptr. at 405 (quoting Cal.Penal Code § 289). The court based this conclusion on the premise that "a violation of Section 289 is complete the instant slight penetration of the proscribed nature occurs." *Id.*

In our view, on criteria we discuss below, the *Harrison* court may well have reached the correct result in affirming defendant's convictions. Nevertheless, we find the court's reasoning unpersuasive and agree with Justice Mosk that:

> the statutory provision may properly be interpreted to declare that each penetration constitutes a separate offense *in the general case*. But [it is] hard to believe that the provision can be read— as it is read by the majority [in *Harrison*]—to declare that each penetration constitutes a separate offense *in all*

> cases and under all circumstances as a matter of law.

*Id.* at 339, 768 P.2d at 1089, 256 Cal.Rptr. at 412 (Mosk, J., concurring).

Both the majority in *Harrison* and the court of appeals in the instant case were led astray by the notion of completeness. In both cases the courts held that because the crime is "complete" the instant penetration "however slight" or "to any extent" occurs, subsequent withdrawal and repenetration must, as a matter of logic, constitute a new and separate offense. The conclusion, however, is not compelled by either logic or common sense. As Justice Mosk points out in *Harrison*, the phrase "penetration, however slight," was intended by the California Legislature to distinguish between an attempt and the completed crime, not between one completed crime and another. *Harrison*, 48 Cal.3d at 339, 768 P.2d at 1089, 256 Cal.Rptr. at 412. Likewise, without a clear statutory command that each repenetration of the same orifice constitutes a distinct offense, we cannot say that the New Mexico Legislature intended multiple punishments for consecutive repenetrations of the same orifice.

■ Section 30-9-11 criminalizes penetration of the protected orifices "with any object." It could be said this Section, by its terms, evinces a legislative intent to punish separately each penetration of a single orifice with different objects or of different orifices with the same or different objects. Nevertheless, as the instant case suggests, separate penetrations can occur within sufficient temporal proximity to raise doubt whether the legislature intended separate punishments for those acts which could equally be inspired by a single criminal intent bent on a single assaultive episode. Thus, for example, we cannot say as a matter of law that digital penetration of the vagina followed immediately by penile penetration of the same orifice constitutes two punishable acts under Section

ion focuses on whether the "single criminal intent" doctrine rendered defendant's four convictions one—an issue we are not concerned with in this case. In any event, *Elliott* was decided

after the enactment of Section 30-9-11, and cannot therefore be of use in determining legislative intent at the time Section 30-9-11 was enacted.

30-9-11. Reasonable minds equally could infer separate acts based solely on the use of separate objects, or a single assault based on the inference of two penetrations inspired by a single criminal intent. Simultaneous penetration of different orifices with different objects raises a similar problem.

In *Bell v. United States*, 349 U.S. 81, 83-84, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955), the Supreme Court enunciated a rule of lenity to assist in resolving ambiguous legislative intent. The Court explained the rule "means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." *Id. See also State v. McGuire*, 110 N.M. 304, 308, 795 P.2d 996, 1000 (1990) (courts should not presume that the legislature intended pyramiding punishments for the same act absent clear indication to the contrary); *State v. Edwards*, 102 N.M. 413, 415, 696 P.2d 1006, 1009 (Ct.App.) (same), *writ quashed*, 102 N.M. 412, 696 P.2d 1005 (1984).

 Applying the rule of lenity to this case, we conclude that Section 30-9-11 cannot be said as a matter of law to evince a legislative intent to punish separately each penetration occurring during a continuous attack absent proof that each act of penetration is in some sense distinct from the others. In determining whether an act is distinct our analysis is informed by the following factors culled from decisions of other jurisdictions that have considered the issue of multiple punishment in cases of rape: (1) temporal proximity of penetrations (the greater the interval between acts the greater the likelihood of separate offenses); (2) location of the victim during each penetration (movement or repositioning of the victim between penetrations tends to show separate offenses); (3) existence of an intervening event; (4) sequencing of penetrations (serial penetrations of different orifices, as opposed to repeated penetrations of the same orifice, tend to establish separate offenses); (5) defendant's intent as evidenced by his conduct and utterances; and (6) number of victims (although not relevant here, multiple victims will likely give rise to multiple offenses). *See Johnson v. Alaska*, 762 P.2d 493, 495 (Alaska Ct.App.1988) (multiple convictions which occur as part of a single transaction cannot stand, however separate convictions for multiple acts of penetration involving different orifices are permissible); *State v. Griffin*, 148 Ariz. 82, 86, 713 P.2d 283, 287 (Ct.App.1986) (noting that each act was performed independently of others, in an entirely different manner, and each was accompanied by the use of force and a lack of consent on the victim's part); *Tarry v. State*, 289 Ark. 193, 195, 710 S.W.2d 202, 203 (1986) (two acts of rape were of a different nature (digital and penile penetration), were separated in time and each was accompanied by a separate impulse); *People v. Rodarte*, 190 Ill.App.3d 992, 1001, 138 Ill.Dec. 635, 640-41, 547 N.E.2d 1256, 1261-62 (1989) (factors to be considered in determining whether defendant's conduct constitutes separate acts or merely distinct parts of one offense include: (1) interval between parts of conduct; (2) existence of an intervening event; (3) the identity of the victim; (4) the similarity of the acts performed; (5) whether the conduct occurred at the same location; and (6) prosecutorial intent); *State v. Hamilton*, 791 S.W.2d 789, 795 (Mo.Ct.App.1990) (among the factors to be considered are time, place and defendant's intent; defendant's intent is the preeminent factor); *Lillard v. State*, 528 S.W.2d 207, 211 (Tenn. 1975) (separate acts of rape, committed at different times and places and the product of several intents, are severally punishable); *State v. Lomargo*, 113 Wis.2d 582, 597 n. 6, 335 N.W.2d 583, 592 n. 6 (1983) (citing *Harrell v. State*, 88 Wis.2d 546, 572-74, 277 N.W.2d 462, 472-74 (1979), for the following factors: the types of acts of penetration, the intervals between acts, the behavior of the defendant between penetrations, changes in geographic location, and any other facts concerning the surrounding conditions under which the assault took place); *Hamill v. State*, 602 P.2d 1212, 1216 (Wyo.1979) (where separate and distinct incidents of sexual assault occur in different ways, each at a different time, or where the same type of sexual assault oc-

curs more than once on the same victim at different times, each incident constitutes a separate definable criminal offense). Except for penetrations of separate orifices with the same object, none of these factors alone is a panacea, but collectively they will assist in guiding future prosecutions under Section 30–9–11.

While we have framed our analysis today in terms of the legal limitations on charging a single offense in different counts, we are cognizant that, when reasonable minds may differ, the question of what constitutes a separate and distinct offense under Section 30–9–11 may well reside with the jury. That question is not before us. Here, the State failed, as a matter of law, to establish that each of the nineteen acts charged was distinct from the prior and subsequent acts.

*Analysis.* With the above-described factors in mind, we review the record and transcript of the proceedings below. The victim testified that James penetrated her a minimum of nineteen times: five penile penetrations each of the anus and vagina, five penetrations of the mouth, three digital penetrations of the vagina and a single digital penetration of the anus. Although unable to recall the exact sequence of events, the victim stated that she was certain all of the penetrations occurred. According to the victim, the entire attack lasted approximately one hour from the time Marvin left the room.

■ Upon further questioning, the victim was able to clarify portions of the assault. The assault commenced in the living room where James penetrated his victim numerous times. The testimony fails to reveal precisely the duration, sequence, or number of penetrations that occurred in the living room. It may as readily be inferred that certain acts were simultaneous penile and/or digital withdrawals and repenetrations, or that each penetration was separate under the criteria we describe today. Evidence equally consist-

ent with two hypotheses tends to prove neither. *Bolt v. Davis,* 70 N.M. 449, 459, 374 P.2d 648, 655 (1962).

■ James then led his victim to the bathroom where he ordered her to cleanse herself with a washcloth. After the victim finished cleaning herself, James "stuffed the washcloth up into [her] vagina." [7] James then led the victim back to the living room by way of the kitchen. Once back in the living room, James brandished a knife, forced his victim into a lying position on the floor, and threatened to behead her. He placed the knife behind her ear, and proceeded to insert his finger into her vagina. Next, he forced her into a kneeling position, and penetrated her vaginally with his penis before the victim succeeded in escaping.

Based on the foregoing synopsis of events, and indulging in all presumptions in favor of the verdict, we find that the evidence supports, at most, five convictions and sentences under Section 30–9–11. Two offenses were committed upon returning to the living room—one digital penetration of the vagina and, after repositioning the victim, one penile penetration of the vagina. Those acts were sufficiently distinct under the criteria we advance today.

Remaining, however, are seventeen alleged penetrations for which, in addition to the victim's above-described testimony, we have no evidence to support an inference that the penetrations were distinct. From the meager record before us, despite the sheer number of penetrations alleged by the victim, we may infer only three additional distinct penetrations in either the bathroom or the living room—one penile penetration each of the vagina and anus, and one penile penetration of the mouth (fellatio). The serial penetrations of these different orifices and the protracted nature of the defendant's conduct establish, as a matter of law, three distinct offenses in addition to the two committed after leaving

---

**7.** After examining the indictment in its entirety we conclude that the State failed to charge Her-

ron with criminal sexual penetration based on

the bathroom.[8] We cannot, however, establish additional distinct penetrations. The evidence simply does not permit inferences that the fourteen remaining penetrations were in any sense separate and distinct from the others. The trial court erred in not dismissing fourteen of the charges at the close of the State's case when defendant moved for the court to do so, and when that motion was renewed at the end of the entire case.

For all of the foregoing reasons, we affirm five convictions and sentences for second-degree criminal sexual penetration. We remand to the trial court with instructions to vacate fourteen convictions and sentences for second-degree criminal sexual penetration and to resentence accordingly.[9]

IT IS SO ORDERED.

SOSA, C.J., and FRANCHINI, J., concur.

the alleged penetration of the victim's vagina with the washcloth.

**8.** Although we ultimately reach the same result as that advanced by Herron, namely a total of five separate offenses, we emphasize that we do so by way of a rationale different from Herron's "object-orifice" theory.

**9.** On remand the trial court shall not disturb either the five sentences for second-degree criminal sexual penetration that we affirm, or the remaining sentences that we did not address in this opinion. The court's function on remand is limited to a review of the total sentencing package received by Herron in light of the disposition of this case.