2008-NMCA-009

176 P.3d 340

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**James Michael OLSSON, Defendant–
Appellant.**

**No. 27,028.**

Court of Appeals of New Mexico.

Nov. 14, 2007.

Certiorari Granted, No. 30,789,
Jan. 11, 2008.

Gary K. King, Attorney General, Santa Fe, NM, James W. Grayson, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Nina Lalevic, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Chief Judge.

{1} Defendant James Michael Olsson was indicted in August 2005 on sixty counts of sexual exploitation of children, contrary to NMSA 1978, § 30–6A–3(A) (2001) (amended 2007), based on sixty photographs, which were among other photographs found in three binders in his vehicle. Defendant filed a motion to merge the sixty counts into one count. The district court denied the motion but granted Defendant's request to certify the issue for interlocutory appeal pursuant to NMSA 1978, § 39–3–3(A)(3) (1972). This Court granted Defendant's application for interlocutory appeal. Defendant argues that the Legislature intended the multiple counts to be charged as one count. The State argues that the issue is not ripe for appeal. The State further argues that, if we disagree with its argument that the case is not ripe for appeal, we can only perform part of the unit of prosecution analysis applicable to this case because part of the analysis is factual, and thus a trial is required. We disagree with the State on the ripeness issue. On the merits, we perform only the legal part of the unit of prosecution analysis and hold that Section 30–6A–3(A) does not clearly define the unit of prosecution for binders of obscene photographs. We agree with the State that more facts need to be developed before we can perform any more of the unit of prosecution analysis, and thus we remand for further proceedings.

## DISCUSSION

{2} The statute prohibiting sexual exploitation of children states in part:

It is unlawful for a person to intentionally possess any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if that person knows or has reason to know that the obscene medium depicts any prohibited sexual act or simulation of such act and if that person knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age.

§ 30–6A–3(A). A "visual or print medium" is defined as:

(1) any film, photograph, negative, slide, computer diskette, videotape, videodisc or any computer or electronically generated imagery; or

(2) any book, magazine or other form of publication or photographic reproduction containing or incorporating any film, photograph, negative, slide, computer diskette, videotape, videodisc or any computer generated or electronically generated imagery[.]

NMSA 1978, § 30–6A–2(B) (2001).

### Ripeness

{3} The State contends that we should hold that this case is not ripe for appeal and thus we should not review it. Ripeness is a judicial tool used to prevent rendering an advisory opinion on a future set of circumstances. *See U.S. West Commc'ns, Inc. v. N.M. State Corp. Comm'n*, 1998–NMSC–032, ¶ 8, 125 N.M. 798, 965 P.2d 917. The State asserts that courts have a "powerful interest in avoiding piecemeal appeals." *State v. Apodaca*, 1997–NMCA–051, ¶ 16, 123 N.M. 372, 940 P.2d 478. The State argues that the nature of this double jeopardy appeal, a multiple punishment case as opposed to a successive prosecution case, allows Defendant to fully vindicate his rights on appeal after a trial, and thus an interlocutory appeal is not necessary. The State points out that under successive prosecution cases, an appeal is allowed under the collateral order doctrine because a trial court's decision that double jeopardy does not prevent a trial represents a final decision on that issue, which is separate from the issue of guilt and innocence, and the right not to be again tried would be significantly undermined without an immediate appeal. The State then underscores that this is not a successive prosecution case and that those same interests do not apply, and therefore argues that we should not review this appeal.

{4} If this issue were before this Court without having been certified, we would have to determine whether we could overcome the presumption against piecemeal appeals, and one possible way of doing so is when a collateral issue is present. A case truly presents a collateral issue in very limited circumstances, and the collateral order doctrine "is a narrow exception to the principle of finality that permits appellate review of orders implicat[ing] rights that will be irretrievably lost, absent immediate appeal and regardless of the outcome of an appeal from the final judgment." *Murphy v. Strata Prod. Co.*, 2006–NMCA–008, ¶ 10, 138 N.M. 809, 126 P.3d 1173 (alteration in original) (internal quotation marks and citation omitted). However, this case is a certified interlocutory appeal. Section 39–3–3(A)(3) allows a certified interlocutory appeal

by filing an application for an order allowing an appeal in the appropriate appellate court within ten days after entry of an interlocutory order or decision in which the district court, in its discretion, makes a finding in the order or decision that the order or decision involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from such order or decision may materially advance the ultimate termination of the litigation.

The language of this statute sets a different standard for our acceptance of certified interlocutory appeals than that under the collateral order doctrine. This Court has exercised its discretion in granting Defendant's application for interlocutory appeal. *See* Rule 12–203 NMRA; *City of Sunland Park v. Paseo Del Norte Ltd.*, 1999–NMCA–124, ¶ 8, 128 N.M. 163, 990 P.2d 1286. We note that the State did not file a response to the application for interlocutory appeal. *See* Rule 12–

203(D). Because of the district court's certification and because the appeal "involves a controlling question of law as to which there is a substantial ground for difference of opinion and . . . an immediate appeal from [the] order or decision may materially advance the ultimate termination of the litigation[,]" we are unpersuaded that we should decline to review this case. § 39–3–3(A)(3).

## Unit of Prosecution Analysis

■ {5} The analysis in a unit of prosecution case, such as the present case, requires that we "first ask whether the statute clearly define[s] the unit of prosecution[,]" which is purely a legal question. *State v. Boergadine,* 2005–NMCA–028, ¶ 15, 137 N.M. 92, 107 P.3d 532 (first alteration in original) (internal quotation marks and citation omitted). "If a statute's unit of prosecution is clearly defined, we must look no further than the face of the statute." *Id.* However, if the legislative intent is unclear after simply looking to the statute, we next "determine whether there was a sufficient showing of distinctness between a defendant's acts." *Id.* (internal quotation marks and citation omitted). When there is proof that each act is distinct from the others, then we need not apply the rule of lenity. *State v. Barr,* 1999–NMCA–081, ¶ 15, 127 N.M. 504, 984 P.2d 185. However, if there is not a sufficient showing of distinctness, then, applying the rule of lenity, "we presume the [L]egislature did not intend to fragment a course of conduct into separate offenses." *State v. Alvarez–Lopez,* 2004–NMSC–030, ¶ 40, 136 N.M. 309, 98 P.3d 699 (alteration in original) (internal quotation marks and citation omitted). This analysis is still a question of law; however, it is one in which we must apply the law to the facts of the case. *See Boergadine,* 2005–NMCA–028, ¶ 12, 137 N.M. 92, 107 P.3d 532 (stating that we review unit of prosecution cases de novo and determine whether, on the facts of the case, numerous convictions violate double jeopardy).

{6} We apply various factors to determine whether there is a "sufficient showing of distinctness." *Id.* ¶ 15, 137 N.M. 92, 107 P.3d 532 (internal quotation marks and citation omitted). The factors are: (1) the temporal proximity of the acts (the greater the interval between acts, the greater the likelihood of separate offenses); (2) location of the victim(s) during each act (a different location indicates a separate offense); (3) existence of an intervening event; (4) sequencing of acts, *see id.* ¶ 23 (pointing out that this factor is more tailored to sex offenses because it emphasizes the sequence of penetrations); (5) the defendant's intent as evidenced by his conduct and utterances; and (6) the number of victims (multiple victims will likely give rise to multiple offenses). *Herron v. State,* 111 N.M. 357, 361, 805 P.2d 624, 628 (1991); *Boergadine,* 2005–NMCA–028, ¶ 21, 137 N.M. 92, 107 P.3d 532. "[N]one of these factors alone is a panacea." *Boergadine,* 2005–NMCA–028, ¶ 21, 137 N.M. 92, 107 P.3d 532 (internal quotation marks and citation omitted).

■ {7} Under the first part of the two-step unit of prosecution analysis, based on questions raised by the parties as to the clarity and purpose of the statute, we conclude that the statute does not clearly define the unit of prosecution. The parties make various arguments for and against such a determination. They argue the meaning of various words in the statute. For example, Defendant points out that the statute uses the word "any" twice and, referring to a dictionary definition of "any," argues that the statute must be referring to children or photographs " 'of whatever quantity,' or 'one or another' . . . taken at random." Defendant thus argues that by using "any," the Legislature meant to punish a course of conduct rather than each separate possession. In opposition, the State argues that "any" must be construed (1) in conjunction with the singular words that follow it, namely, any obscene "visual or print medium" and any "prohibited sexual act," and (2) in conjunction with the statutory definitions where "any" is also followed by singular words, for example, "any film, photograph, [etc.,]" evincing legislative intent to punish for each and every prohibited item. *See* §§ 30–6A–2(A), (B), –3(A). Further, Defendant contrasts NMSA 1978, § 30–6–1 (2005), "Abandonment or abuse of a child," with Section 30–6A–3, "Sexual exploitation of children," arguing that "[t]he [L]egislature must have intended

that Section 30–6–1 punish the abuse of each specific child that is abused[,]" whereas Section 30–6A–3 evidences "the [L]egislature's intent to punish sexual exploitation of children in the plural, not [for] each specific child." The State counters that the full title of the law under which Defendant was charged, instead of its codified title, focuses on a single child by stating that the act makes "it a criminal offense for a person to possess an obscene visual or print medium that depicts a sexual act involving a child."

{8} The parties also argue more general bases for their interpretations. For example, one intriguing question is whether the Legislature could have intended the seemingly excessive punishment that can build up if separate punishments were permitted for each separate picture possessed. Defendant points not only to the sixty separate original charges, but to an additional ninety-two digital images taken from his computer that are the subject of additional charges in an amended criminal information,[1] amounting to something short of a life sentence if he is convicted and punished for each separate possession. This question draws on Defendant's argument that the Legislature intended to punish only a course of conduct. Defendant also sees an absurdity if a person in possession of one book or magazine containing several pictures can be charged with only one count, whereas a person who cuts the photographs out of the book or magazine could be charged with separate counts. Another intriguing question is whether the Legislature could have intended to tacitly permit, if not encourage, persons to acquire substantial numbers of pornographic photographs by prosecuting collectors as though they possessed only one photograph. The State focuses on a broad purpose of the statute to punish the pictorial depiction of a prohibited sexual act involving a minor, placing emphasis on sexual exploitation, sexual depiction, and the harm to each child with each exploitation and depiction.

{9} We are not persuaded by either party that the unit of prosecution for binders full of photographs is clearly defined by the statute.

We are unable to determine the Legislature's intended unit of prosecution for this case, given the wording of the statute, without the second part of the unit of prosecution analysis. *See Herron,* 111 N.M. at 360–61, 805 P.2d at 627–28 (holding that the criminal sexual penetration statute does not clearly define the unit of prosecution); *Barr,* 1999–NMCA–081, ¶ 18, 127 N.M. 504, 984 P.2d 185 (indicating that the statute criminalizing contributing to the delinquency of a minor does not clearly define the unit of prosecution). When we cannot hold that the language of the statute clearly defines the unit of prosecution, we must turn to the *Herron* factors and the rule of lenity.

■ {10} However, we cannot apply the *Herron* factor analysis at this stage of the litigation in the present case because there has been no trial or hearing developing the relevant facts. *See Barr,* 1999–NMCA–081, ¶ 17, 127 N.M. 504, 984 P.2d 185 (noting that under the *Herron* analysis, we "consider any distinctness factors applicable under the *facts* of [the] case" (emphasis added)). In the present case, we do not know, for example, if there are multiple victims, whether the pictures were all acquired from one source or multiple sources, or whether they were acquired all at once or one at a time. *See, e.g., Herron,* 111 N.M. at 362–63, 805 P.2d at 629–30 (analyzing the six factors listed earlier based on the facts established at trial); *Boergadine,* 2005–NMCA–028, ¶¶ 22–27, 137 N.M. 92, 107 P.3d 532 (same). These and other facts need to be developed through the trial process. Without performing the *Herron* distinctness analysis, we are unable to determine whether it is appropriate to apply the rule of lenity. *See Barr,* 1999–NMCA–081, ¶ 15, 127 N.M. 504, 984 P.2d 185 ("With a sufficient showing of distinctness, application of the rule of lenity would not be required."). Thus, on the record before us we can decide nothing more than the first part of the unit of prosecution analysis in this case.

**CONCLUSION**

{11} The "controlling question of law," *see* § 39–3–3(A)(3), in this case is a very limited

---

1. These additional charges were not the subject of the order that is the subject of this interlocu-tory appeal, since the amended criminal informa-tion was filed after entry of the order in question.

one: whether the Legislature clearly defined the unit of prosecution for sexual exploitation of children based on the possession of three binders containing several photographs. We hold that the Legislature did not clearly define the unit of prosecution and, as such, we remand for further proceedings to develop the facts of this case. Further, facts must be developed so that we can apply the *Herron* distinctness test and thus determine whether the rule of lenity applies.

{12} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and IRA ROBINSON, Judges.