# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-045

Filing Date: August 13, 2020

Nos. A-1-CA-37642 and A-1-CA-38099

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**GERARDO TORRES,**

Defendant-Appellee.

and

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**KENDALE HENDRIX,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven E. Blankinship, District Judge**

Certiorari Granted, November 9, 2020, No. S-1-SC-38484. Released for Publication October 12, 2021.

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Victor E. Sanchez, Jr., Assistant Appellate Defender
Albuquerque, NM

for Appellees

## OPINION

**DUFFY, Judge.**

**{1}**     These appeals arise from separate and apparently unrelated incidents of cattle rustling in Otero County occurring some eighteen months apart. Defendant Gerardo Torres, accused of thefts occurring on two dates in early 2017, and Defendant Kendale Hendrix, accused of a theft occurring in August 2018, were each charged with multiple counts of larceny (livestock)—one count per head—contrary to NMSA 1978, Section 30-16-1(G) (2006). In both cases, the district court granted Defendants' motions to merge the larceny counts in their respective indictments based on the single-larceny doctrine and on double jeopardy grounds. Because the State's appeals in both cases address identical issues on substantially similar facts, we exercise our discretion to consolidate them for decision. *See* Rule 12-317(B) NMRA. We conclude the district court correctly determined the unit of prosecution and affirm both orders.

## BACKGROUND

**{2}**     For purposes of evaluating Defendants' multiplicity arguments, the district court accepted the parties' stipulations to treat as true the factual allegations contained in affidavits accompanying the criminal complaint or the arrest warrant in their respective cases. *See Herron v. State*, 1991-NMSC-012, ¶ 6 n.4, 111 N.M. 357, 805 P.2d 624 ("We use the term 'multiplicity' to describe the situation when an indictment charges a single offense in different counts."). On appeal, the parties do not dispute the factual predicate underlying the charges,[1] and pursuant to *State v. Foulenfont*, we review the legal issues raised in these appeals in light of the uncontested factual predicates presented to the district court. 1995-NMCA-028, ¶¶ 4-6, 119 N.M. 788, 895 P.2d 1329 (concluding that the district court had authority to consider the defendants' pretrial motion to dismiss two counts in the indictment where the defendants argued that the factual predicate underlying the charges did not fit within the definition of burglary, the state did not dispute the defendants' characterization, and the state focused on whether a "fence" comes within the definition of "structure" in the statute, rendering the argument a purely legal question).

**The Torres Case**

**{3}**     Defendant Torres was an employee at Crossroads Cattle Company. On June 1, 2017, the ranch foreman at Crossroads observed that the calf crop in one of the pastures was substantially low—about 40-50 percent compared to 80-90 percent in the other pastures. Approximately three weeks later, Peewee Serna advised the ranch

---

[1]Defendants stated in their answer briefs that for purposes of these appeals, they accept as true the allegations set forth in the affidavits. Although the State contends on appeal that the facts set forth in the affidavits are not adequate to determine whether there was a single offense or multiple offenses, the State does not otherwise dispute the characterization of the factual predicates underlying the charges.

foreman that Defendant Torres had stolen and sold unbranded calves; Peewee stated that he had unwittingly helped Defendant Torres load about thirteen unbranded calves in January and more later. When questioned by the foreman, Defendant Torres admitted to stealing thirteen head in January 2017. Officer Skylar Davis, an enforcement officer with the New Mexico Livestock Board, obtained copies of market inspections for sales at the Rio Grande Livestock Auction in El Paso, Texas, which showed that Defendant Torres had sold a total of eighteen calves on two dates. The ranch foreman at Crossroads told Officer Davis that Crossroads had never sold cattle at that auction and employees are not allowed to keep their own cattle on the ranch. The State subsequently filed a criminal information charging Defendant Torres with eighteen counts of larceny of livestock.

**The Hendrix Case**

{4}     Defendant Hendrix was "known to be a hauler of cattle for the Ganada Cattle Company." Although Defendant Hendrix's own accounts varied, he generally admitted that he and Skeeter Chadwick, an employee of Ganada, made arrangements to take twenty-five head of no-brand cattle from Ganada to San Angelo, Texas to sell them. Chadwick apparently offered to pay Defendant Hendrix three times the normal rate for hauling.

{5}     Defendant Hendrix picked up twenty-five head from Ganada on August 28, 2018, and while he and Chadwick were on the road to Texas, an off-duty cattle inspector spotted them and reported a possible illegal shipment to the New Mexico Livestock Board. Once the men arrived at the San Angelo Sale Barn, a special ranger for the Texas Southwest Cattle Raisers noted that the men unloaded twenty-four head of no-brand cattle, mixed in breed and color, with no ear tags or ear marks; one calf was too weak to walk off the trailer on its own and was later euthanized. When questioned, Defendant Hendrix stated that he had loaded up the cattle alone in Dell City, Texas, and that the cattle belonged to him. Defendant Hendrix then checked the cattle into the Sale Barn under his name. In a later interview with an inspector for the New Mexico Livestock Board, Defendant Hendrix indicated that he acted at Chadwick's direction, but stated that Chadwick told him "that he could get the money for the cattle, keep his $1200, and Chadwick would get the rest." A grand jury indicted Defendant Hendrix on twenty-five counts of larceny of livestock.[2]

**Procedural Background**

{6}     Defendant Torres filed a pretrial motion asking the district court to merge the larceny counts into a single charge. He argued that the multiple larceny charges violate double jeopardy principles under the circumstances and that the single larceny doctrine, which defines the taking of multiple articles of property from the same owner at the same time and place as a single transaction, allows the court to merge the larceny charges into a single count before trial as a matter of law. *See State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 43, 136 N.M. 309, 98 P.3d 699 (defining the single-larceny

---

2Chadwick was also charged and prosecuted separately.

doctrine). The State did not file a response. After conducting a hearing and considering the oral arguments of both the State and Defendant Torres, the district court granted the motion on June 13, 2018, holding that under the facts stipulated to by the parties, no more than two larcenies occurred. After the district court declined the State's motion to reconsider, the State sought an interlocutory appeal.

{7}     When Defendant Hendrix was indicted later that year, his case was assigned to the same district court judge. Defendant Hendrix also filed a motion to merge his larceny charges on substantially the same basis. The district court considered the State's response but ultimately granted the motion, applying the same analysis set forth in its earlier order in Defendant Torres's case. The State pursued pretrial appeals in both cases.[3]

## DISCUSSION

{8}     The State's appeals ask us to consider the unit of prosecution for larceny of livestock under Section 30-16-1(G) and determine whether, under the circumstances presented in these cases, the Legislature intended to punish the theft of multiple animals as a single offense or to allow separate punishments for each animal taken. *See State v. Ramirez*, 2018-NMSC-003, ¶ 46, 409 P.3d 902 ("[T]he unit of prosecution defines *how many* offenses the defendant has committed. It determines whether conduct constitutes one or several violations of a single statutory provision." (internal quotation marks and citation omitted)); *Swafford v. State*, 1991-NMSC-043, ¶ 8, 112 N.M. 3, 810 P.2d 1223 ("The relevant inquiry in [a unit of prosecution case] is whether the legislature intended punishment for the entire course of conduct or for each discrete act."). For three decades, our courts have evaluated the Legislature's intent with respect to the unit of prosecution by applying the analytical approach set forth in *Herron*, 1991-NMSC-012. First, we ask "whether the statute clearly defines the unit of prosecution, which is purely a legal question." *State v. Olsson* (*Olsson I*), 2008-NMCA-009, ¶ 5, 143 N.M. 351, 176 P.3d 340 (alterations, internal quotation marks, and citation omitted). If the statutory language spells out the unit of prosecution, the inquiry is complete. *State v. Gallegos*, 2011-NMSC-027, ¶ 31, 149 N.M. 704, 254 P.3d 655. But if it does not, then courts traditionally move to the second step, "in which we determine whether a defendant's acts are separated by sufficient 'indicia of distinctness' to justify multiple punishments under the same statute." *Id.* (internal quotation marks and citation omitted). *But see Olsson I*, 2008-NMCA-009, ¶¶ 5-10 (evaluating a defendant's pretrial appeal after the district court denied his request to merge sixty counts of sexual exploitation of children into a single count, and concluding that while the statutory language does not clearly define the unit of prosecution, this Court could not apply the second step of the *Herron* analysis because there had been no trial or evidentiary

---

[3]Although the State pursued both appeals through applications for interlocutory review, we construed them as direct appeals pursuant to NMSA 1978, § 39-3-3(B)(1) (1972) (stating that the state may appeal within "thirty days from a decision, judgment or order dismissing a complaint, indictment or information as to any one or more counts"), because the district court's orders practically resulted in the dismissal of multiple counts against each Defendant.

hearing to develop the facts). "[B]oth stages of the unit of prosecution analysis turn on legislative intent." *Gallegos*, 2011-NMSC-027, ¶ 32.

## A.      The Plain Meaning of the Statutory Language is Ambiguous

**{9}**      Under the first step of the unit of prosecution analysis, we are mindful that "[t]he issue, though essentially constitutional, becomes one of statutory construction." *Herron*, 1991-NMSC-012, ¶ 6. While our courts often go no further than evaluating the plain language of the statute, *see, e.g.*, *Olsson I*, 2008-NMCA-009, ¶ 5 (stating that we proceed to the second step only if "the legislative intent is unclear after simply looking to the statute"), in *Herron*, the Court also considered whether the legislative and statutory history provided guidance on the Legislature's intended unit of prosecution. *See* 1991-NMSC-012, ¶ 8. In 2011, the New Mexico Supreme Court, borrowing intentionally from the analysis applied in the double description line of double jeopardy cases, stated that "when analyzing whether an 'indicium of distinctness' sufficiently separates the acts of the accused to justify multiple punishment [in a unit of prosecution case], we remain guided by the statute at issue, including its language, history, and purpose, as well as the quantum of punishment that is prescribed." *Gallegos*, 2011-NMSC-027, ¶ 33 (alteration omitted). Since then, the Court has included these considerations as part of the first step of the analysis. *State v. Swick*, 2012-NMSC-018, ¶ 33, 279 P.3d 747 (stating that "[i]f the unit of prosecution is not clear from the statute at issue, including its wording, history, purpose, and the quantum of punishment that is prescribed" then courts should move to the second step of the inquiry). Under the traditional or expanded approach, our fundamental task remains the same: we are looking for a clear expression that the Legislature intended to allow multiple punishments for a single act or transaction. *State v. Brown*, 1992-NMCA-028, ¶ 8, 113 N.M. 631, 830 P.2d 183 ("Any doubt will be resolved against construing ambiguous legislative intent in favor of allowing multiple punishments for one act.").

**{10}**      The Legislature identified larceny of livestock as a felony offense in Section 30-16-1(G), stating, "Whoever commits larceny when the property of value stolen is livestock is guilty of a third degree felony regardless of its value." The livestock provision is a subsection of the general larceny statute, Section 30-16-1,[4] in which the Legislature

---

4Section 30-16-1 provides:
        A.        Larceny consists of the stealing of anything of value that belongs to another.
        B.        Whoever commits larceny when the value of the property stolen is two hundred fifty dollars ($250) or less is guilty of a petty misdemeanor.
        C.        Whoever commits larceny when the value of the property stolen is over two hundred fifty dollars ($250) but not more than five hundred dollars ($500) is guilty of a misdemeanor.
        D.        Whoever commits larceny when the value of the property stolen is over five hundred dollars ($500) but not more than two thousand five hundred dollars ($2,500) is guilty of a fourth degree felony.
        E.        Whoever commits larceny when the value of the property stolen is over two thousand five hundred dollars ($2,500) but not more than twenty thousand dollars ($20,000) is guilty of a third degree felony.
        F.        Whoever commits larceny when the value of the property stolen is over twenty thousand dollars ($20,000) is guilty of a second degree felony.

identified three categories of property: " 'generic' property, with gradations of punishment based on the monetary value of the property" and two specific types of property—livestock and firearms. *Alvarez-Lopez*, 2004-NMSC-030, ¶ 41 (discussing the structure of the larceny statute). While our Supreme Court has held that the larceny statute explicitly provides for separate punishments when a defendant steals generic property and another category of property, *see id.* (upholding separate convictions for larceny of generic property and a firearm), our courts have not previously addressed whether separate punishments are permitted under Section 30-16-1(G) for the theft of multiple animals.

**{11}** The district court thoroughly reviewed the livestock provision and concluded that Section 30-16-1(G) defines the unit of prosecution as a single offense regardless of the number of animals taken. The court reasoned that the term "livestock" is used consistently by our Legislature and elsewhere to refer to animals in aggregate and concluded that "[t]he term 'livestock' is plural and, accordingly, it is the whole, or rather, the aggregate of the parts, such that, a *single offense* exists irrespective of whether one (1) or ten (10) animals or fowls were taken when the elements of the offense are the same." *See, e.g.*, NMSA 1978, § 7-35-2(D) (2018) (" '[L]ivestock' means cattle, buffalo, horses, mules, sheep, goats, swine, ratites and other domestic animals useful to humans[.]"); NMSA 1978, § 77-1B-2(K) (2017) (" '[L]ivestock' means all domestic or domesticated animals that are used or raised on a farm or ranch and exotic animals in captivity and includes horses, asses, mules, cattle, sheep, goats, swine, bison, poultry, ostriches, emus, rheas, camelids and farmed cervidae but does not include canine or feline animals[.]"); NMSA 1978, § 77-16-2 (1977) (" '[L]ivestock' shall include domestic animals such as cattle, horses, sheep, hogs, goats and buffaloes."); NMSA 1978, § 30-18-1.2(H) (2009) (" '[L]ivestock' means all domestic or domesticated animals that are used or raised on a farm or ranch and exotic animals in captivity and includes horses, asses, mules, cattle, sheep, goats, swine, bison, poultry, ostriches, emus, rheas, camelids and farmed cervidae but does not include canine or feline animals."). Defendants advocate a similar construction on appeal, contending that the term "livestock" is a collective noun that refers to a group as a single unit.

**{12}** The State challenges the district court's interpretation, arguing that the statutory language does not express a clear unit of prosecution. The State submits that the term "livestock" refers only to a specific *class* of property separate from generic larceny. The State also contends that "[t]reating the term livestock as strictly plural would require that a defendant steal more than one [animal]" before criminal liability could attach—a result the Legislature could not have intended.

**{13}** Although the district court indicated that it did not consider the term to be strictly plural by stating in its order that "a single offense exists irrespective of whether *one (1)* or ten (10) animals or fowls were taken" (emphasis added), we have previously held

---

G.      Whoever commits larceny when the property of value stolen is livestock is guilty of a third degree felony regardless of its value.

H.      Whoever commits larceny when the property of value stolen is a firearm is guilty of a fourth degree felony when its value is less than two thousand five hundred dollars ($2,500).

that where a term can be both singular and plural, it provides "no clear indication of a unit-of-prosecution." *State v. Tidey*, 2018-NMCA-014, ¶ 10, 409 P.3d 1019 (concluding that the unit of prosecution was unclear because "[n]either the legislative definition nor [the statute] indicate whether 'paraphernalia' was intended to be construed as a singular or plural noun"). The same conclusion is required here. The Legislature has not defined "livestock" for purposes of Section 30-16-1(G) and its usage of the term within the statute does not express a clear intent to punish the theft of multiple animals either singly or separately. We conclude the statutory language is ambiguous.

**B.     The History and Purpose of Section 30-16-1(G) Does Not Define a Clear Unit of Prosecution**

**{14}**     Because the plain language of the statute is not dispositive, we accept the State's invitation to explore the statute's history, purpose, and quantum of punishment in accordance with *Gallegos* and *Swick*.

**{15}**     The larceny of livestock statute dates back to 1884, when our territorial legislature enacted an "Act For The Protection of Livestock And Other Purposes." The Legislature stated in Section 68 of the Act that "[a]ny person who shall steal . . . or in any manner deprive the owner of the immediate possession of any neat cattle, horse, mule, sheep, goat, swine, or ass" was guilty of a felony. *See* 1884 Compiled Laws of New Mexico, Title II, ch. I, § 68, C.L. 1885.[5] In Chapter I, Section 69 of the New Mexico Laws of 1884, the Legislature added that the taking or stealing of "any animal or animals herein referred to" shall be deemed to be grand larceny, subjecting the offender to anywhere from one to ten years in the penitentiary "notwithstanding the value of such animal or animals may be less than twenty dollars." *Id.*[6]

**{16}**     This enactment remained in force and without substantial change until 1963, when the Legislature incorporated larceny of livestock into the general larceny statute in its current form. *State v. Pacheco*, 1969-NMCA-127, ¶ 13, 81 N.M. 97, 463 P.2d 521 ("Until the adoption of Ch. 303, Laws 1963, provision had always been made for the punishment of larceny of livestock in a section of our statutes separate from those sections providing the punishments for other larcenies."). Although the current version

---

5Section 68 states in its entirety: "Any person who shall steal, embezzle or knowingly kill, sell, drive, lead, or ride away, or in any manner deprive the owner of the immediate possession of any neat cattle, horse, mule, sheep, goat, swine, or ass; or any person who shall steal embezzle, or knowingly kill, sell, drive, lead, or ride away, or in any manner apply to his own use any neat cattle, horse, mule, goat, sheep, ass, or swine, the owner of which is unknown; or any person who shall knowingly purchase from any one not having the lawful right to sell and dispose of the same, any neat cattle, horse, mule, sheep, swine, or ass, shall be deemed guilty of a felony, and on conviction thereof in any court of competent jurisdiction, shall be punished by imprisonment not less than one year nor more than five years, and by a fine not less than five hundred dollars, nor more than five thousand dollars, at the discretion of the court."

6Section 69 states in its entirety: "All cases which are by this act declared to be larceny, and in all cases of felonious taking, stealing, riding, driving, leading, and carrying away of any animal or animals herein referred to, the same shall be deemed and taken to be, and the courts of this Territory shall construe the same to be grand larceny, subjecting the offender or offenders to be condemned to the penitentiary for a term of not less than one year nor more than ten years, except as otherwise provided for in this act, notwithstanding the value of such animal or animals may be less than twenty dollars."

of the statute continues to classify larceny of livestock separately from other larcenies, the Legislature removed language that would have been helpful in the present dispute. In particular, the pre-1963 act defined the crime as the taking of "any *animal or animals* herein referred to" and stated that the punishment attaches notwithstanding the value of the "animal or animals"—a clearer suggestion that the Legislature then intended to punish larceny of livestock as a single offense regardless of the number of animals taken. The statute is less descriptive following Legislature's substantial revision in 1963, however, and nothing indicates whether the changes reflect a legislative effort to streamline the statutory language while maintaining a consistent construction with the prior act, or instead, whether the changes signal an intent to abandon and depart from the earlier language. Given this, we cannot draw any definitive conclusions about the Legislature's intent from the statutory history.

**{17}** The State's remaining arguments in favor of separate punishments focus on the purpose and structure of the livestock provision. The statute's purpose, according to an Attorney General Opinion from 1930, "was to specially protect ownership in a particular class of property rather than to prevent larceny in general." N.M. Att'y Gen. Op. No. 30-38 (1930); *see Pacheco*, 1969-NMCA-127, ¶ 18 (evaluating the modern larceny statute and noting, "the larceny of livestock statute was apparently enacted to protect the ownership thereof, to prevent a kind of larceny peculiarly easy of commission and difficult of discovery and punishment, and to protect the important industry of stock raising"). To that end, the Legislature has always treated larceny of livestock differently from generic larceny in two ways. First, larceny of livestock has always occupied "a section of our statutes separate from those sections providing the punishments for other larcenies." *Pacheco*, 1969-NMCA-127, ¶ 13. Second, larceny of livestock is punished differently from generic larceny—it constitutes a third degree felony "regardless of [the livestock's] value." Section 30-16-1(G); *see also Pacheco*, 1969-NMCA-127, ¶ 13 (noting that larceny of livestock is punished "based upon the nature of the thing stolen (livestock), rather than upon the value of the thing stolen").

**{18}** According to the State, these differences show a legislative intent to attach a different unit of prosecution to larceny of livestock and to punish it more severely than larceny of generic property. Although there is support for the notion that the specific larceny classifications address different social concerns warranting separate punishments when charged along with *other forms of larceny*, as was the case in *Alvarez-Lopez*, the statutory structure does not reveal the Legislature's intended unit of prosecution within a particular category. 2004-NMSC-030, ¶ 42 (concluding that the structure of Section 30-16-1 indicates the Legislature considered the larceny of firearms to be so serious it "created a separate offense within the general larceny statute for the unlawful taking of a firearm" such that when the property stolen includes both generic property and a firearm, multiple punishments are authorized).

**{19}** Nor does the quantum of punishment resolve the matter. *See Gallegos*, 2011-NMSC-027, ¶ 33 (stating that the quantum of punishment is a relevant consideration). Even if the Legislature's designation of the crime as a third degree felony is an indication that it considers larceny of livestock a serious offense, the State has not

shown that the level of punishment demonstrates a clear intent to allow multiple punishments here. *Cf. id.* ¶ 53 (observing that the Legislature's punishment scheme for conspiracy based on the highest crime conspired provided additional support for the conclusion that its intended unit of prosecution was based on the conspiratorial agreement rather than its objectives). Unlike the generic larceny provisions and many other property crimes, the Legislature determined to apply the same punishment regardless of the value of the livestock stolen. Consequently, while the livestock provision allows the theft of a single calf to be punished as a third degree felony, *see Pacheco*, 1969-NMCA-127, ¶¶ 5, 19 (upholding the defendant's conviction for theft of a single calf against his equal protection challenge to the constitutionality of his sentence), it can also be read to prescribe the same punishment regardless of the total, aggregate value of the stolen livestock. Because value is simply not considered for this type of larceny, comparing the potential for disparate punishments between the livestock provision and the value-based generic larceny provisions, as the State advocates, is not a sound methodology for identifying the Legislature's intent. *See State v. Olsson* (*Olsson II*), 2014-NMSC-012, ¶ 30, 324 P.3d 1230 (considering disparity in punishments when comparing possession of child pornography under NMSA 1978, Section 30-6A-3(A) (2007, amended 2016), to criminal sexual contact of a minor and concluding the disparity may indicate the Legislature did not intend separate punishments).

**{20}** In the same manner, Defendants point out that larceny of livestock carries a three-year basic sentence and thus the eighteen counts in Defendant Torres's case would result in a fifty-four-year basic sentence and the twenty-five counts in Defendant Hendrix's case would result in a seventy-five-year basic sentence—far exceeding the punishments for higher-level violent offenses. *See* NMSA 1978, § 31-18-15(A)(11) (2016, amended 2019) (stating the basic sentence for third degree felonies); *cf. State v. Santillanes*, 2001-NMSC-018, ¶ 31, 130 N.M. 464, 27 P.3d 456 ("There are a very limited number of crimes in the Criminal Code that are designated as first degree felonies, and these crimes are subject to a substantial sentence of eighteen years imprisonment."). Our courts have declined to consider the potential length of a sentence as a guide in determining the appropriate unit of prosecution, noting that we generally defer to the judgment of the Legislature concerning the appropriate punishment for crimes. *State v. Bernal*, 2006-NMSC-050, ¶ 29, 140 N.M. 644, 146 P.3d 289. We see no reason to depart from that approach here.

**{21}** At the first step of our unit-of-prosecution analysis, however, we cannot conclude that the Legislature intended to impose a separate punishment for each stolen animal unless it is clear that the Legislature intended to do so. Based on our review of the language, history, and purpose of Section 30-16-1(G), we do not find clear indicia of a legislative intent to allow multiple punishments, and therefore conclude the Legislature's intent remains ambiguous.

## C.    Single-Larceny Doctrine

**{22}** The single-larceny doctrine, also known as the single criminal intent doctrine, is "a canon of construction used when the Legislature's intent regarding multiple

punishments is ambiguous." *Alvarez-Lopez*, 2004-NMSC-030, ¶ 43 (holding that the doctrine was inapplicable in that case because the Legislature's intent was clear). Fittingly, the doctrine originated in New Mexico in a cattle-rustling case in 1914. *See State v. Klasner*, 1914-NMSC-015, ¶ 1, 19 N.M. 474, 145 P. 679.

**{23}** The traditional iteration of the single-larceny doctrine is that "when several articles of property are stolen by the defendant from the same owner at the same time and at the same place, only one larceny is committed." *State v. Rowell*, 1995-NMSC-079, ¶ 15, 121 N.M. 111, 908 P.2d 1379 (alteration, internal quotation marks, and citation omitted). In *Klasner*, the defendant was charged with the larceny of nineteen head of calves belonging to unknown owners, and our Supreme Court recognized that "a taking at one time or place of property belonging to *several* people constitutes a single crime that cannot be separately punished." *State v. Brooks*, 1994-NMSC-062, ¶ 5, 117 N.M. 751, 877 P.2d 557 (emphasis added) (citing *Klasner*, 1914-NMSC-015, ¶ 2); *see also Brown*, 1992-NMCA-028, ¶ 8 (noting that because larceny is defined as "the stealing of anything of value which belongs to another[,] . . . the state need not prove ownership in a particular person; proof that the property belonged to someone other than the defendant is sufficient" (internal quotation marks and citation omitted)). "The determinative element was that there had been one transaction even though the property belonged to several individuals." *Brooks*, 1994-NMSC-062, ¶ 5.

**{24}** In 1955, our Supreme Court applied the single-larceny doctrine to a *series of takings* from a single owner. *State v. Allen*, 1955-NMSC-015, ¶ 5, 59 N.M. 139, 280 P.2d 298. "There, [the Court] focused not on the number of transactions, but on the *intent* of the defendant[,]" stating:

> Where the property is stolen from the same owner and from the same place by a series of acts, if each taking is the result of a separate, independent, impulse, each is a separate crime; but if the successive takings are all pursuant to a single, sustained, criminal impulse and in execution of a general fraudulent scheme, they together constitute a single larceny, regardless of the time which may elapse between each act.

*Brooks*, 1994-NMSC-062, ¶ 6 (internal quotation marks and citation omitted).

**{25}** The State urges us not to apply the single-larceny doctrine, arguing principally that it is an antiquated relic that has been subsumed and replaced by the modern double jeopardy analysis articulated in *Herron*. Contrary to the State's position, this Court specifically recognized the doctrine after *Herron* in *Brown*, 1992-NMCA-028, ¶ 13, and our courts have consistently applied the doctrine in larceny and embezzlement cases for over a century, continuing until this day. *See State v. Pedroncelli*, 1984-NMSC-009, ¶ 10, 100 N.M. 678, 675 P.2d 127 (affirming the defendant's single conviction for embezzlement after considering the single-larceny doctrine and noting that a fact-finder may determine whether the successive takings or conversions are associated with a single, sustained criminal intent); *Allen*, 1955-NMSC-015, ¶ 8 (applying the single-larceny doctrine to a series of takings); *Klasner*, 1914-NMSC-015,

¶ 1 (holding that the taking of property from the same location at the same time, although belonging to separate individuals, could be punished as a single crime); *see also State v. Krohn*, No. A-1-CA-35546, mem. op. ¶ 12 (N.M. Ct. App. Apr. 8, 2019) (non-precedential) (applying the single-larceny doctrine to the defendant's multiple acts of embezzlement); *State v. Johnson*, 1996-NMCA-017, ¶¶ 8-10, 121 N.M. 337, 911 P.2d 231 (applying the single-larceny doctrine to the defendant's multiple convictions for unlawful dealing in food coupons over time, a form of larceny); *Brown*, 1992-NMCA-028, ¶ 13 (concluding that application of the single-larceny doctrine to the defendant's multiple convictions for larceny from two separate victims would lead to a single larceny because there was only one taking); *State v. Boeglin*, 1977-NMCA-004, ¶ 18, 90 N.M. 93, 559 P.2d 1220 (applying the single-larceny doctrine to the defendant's five convictions for stealing five firearms and holding that the "taking of two or more articles of property from the same owner at the same time and place [should] be prosecuted as only one larceny").

**{26}** Our holding in *State v. Bernard* does not require a different conclusion. 2015-NMCA-089, ¶ 21, 355 P.3d 831 (considering whether to extend the doctrine to the crime of possession of a stolen vehicle).[7] We stated, "Even though our courts have recognized the validity of the single-larceny doctrine, we see no indication that the doctrine supersedes the well-established two-step legislative intent inquiry in a unit of prosecution case." *Id.* (citation omitted). While the State interprets this statement to mean that *Herron* does, in fact, supersede the single-larceny doctrine, we do not consider the two doctrines to be mutually exclusive or in conflict. As Justice Minzner wrote in *Alvarez-Lopez*, the single-larceny doctrine applies only where the Legislature's intent regarding multiple punishments is unclear—meaning, in practice, that the doctrine can only apply after engaging in the first step of the unit of prosecution analysis and only then if the Legislature's intent remains ambiguous. 2004-NMSC-030, ¶ 43. Because neither *Bernard* nor *Alvarez-Lopez* involved questions of how to apply the single-larceny doctrine after the first step, they offer no guidance on how we should do so here. *See Sangre de Cristo Dev. Corp. v. City of Santa Fe*, 1972-NMSC-076, ¶ 23,

---

[7]*Bernard* is consistent with a long line of cases that have declined to extend and apply the doctrine outside of the context of larceny and embezzlement. *See Bernal*, 2006-NMSC-050, ¶ 30 (declining to extend the single-larceny doctrine to the crime of robbery); *State v. Baca*, 1997-NMSC-018, ¶ 11, 123 N.M. 124, 934 P.2d 1053 (declining to extend the single-larceny doctrine to the crime of forgery); *Rowell*, 1995-NMSC-079, ¶ 20 (declining to extend the doctrine where the larcenous scheme involved multiple victims, locations, and time periods); *Bernard*, 2015-NMCA-089, ¶ 21 (declining to extend the single-larceny doctrine to the crime of possession of a stolen vehicle); *State v. Boergadine*, 2005-NMCA-028, ¶ 29, 137 N.M. 92, 107 P.3d 532 (declining to extend the single-larceny doctrine to the crime of fraud); *State v. Morro*, 1999-NMCA-118, ¶ 26, 127 N.M. 763, 987 P.2d 420 (declining to extend the single-larceny doctrine to the crime of defacing tombs).
This fact, in combination with *Bernard's* unique analytical approach to the unit of prosecution in possession cases, renders *Bernard* substantively distinguishable and inapplicable to the unit of prosecution analysis in this case. *Bernard*, 2015-NMCA-089, ¶¶ 20-31 (discussing the unit of prosecution analysis for possession after our Supreme Court determined that the *Herron* indicia of distinctness factors did not apply in *Olsson II*). We decline the State's request to apply a similar analysis and to consider the statutory and regulatory scheme for livestock as part of either the first step of the unit of prosecution analysis, as the State advocates in the Torres appeal, or as an indicia of distinctness in the second step of the analysis, as the State advocates in the Hendrix appeal. *See id*. ¶¶ 28-30 (examining, for purposes of the second step of the analysis, the state's regulatory scheme as evidence of the Legislature's intent).

84 N.M. 343, 503 P.2d 323 ("The general rule is that cases are not authority for propositions not considered.").

**{27}** As the State correctly observes, our courts have never squarely reconciled the single-larceny doctrine with the modern unit of prosecution analysis. *See Brown*, 1992-NMCA-028, ¶ 13 (affirming the validity of the single-larceny doctrine after engaging in the second step of the *Herron* analysis and concluding that "had we applied it rather than *Herron*, we would have reached the same result"). Our Supreme Court's characterization of the doctrine as "a canon of construction used when the Legislature's intent regarding multiple punishments is ambiguous" signals that it functions as a rule or principle that guides interpretation of the statute to resolve the ambiguity. *See Alvarez-Lopez*, 2004-NMSC-030, ¶ 43; *Cannon of Construction*, *Black's Law Dictionary* (11th ed. 2019) (defining "canon of construction" as " [a] rule used in construing legal instruments, esp. contracts and statutes; a principle that guides the interpreter of a text"). When we apply the single-larceny doctrine to interpret the unit of prosecution in the larceny of livestock provision, it clarifies that a taking of multiple head of cattle at the same time and place (single transaction), or a series of takings from a single owner with a single criminal intent (single intent), constitute but one larceny. *Brooks*, 1994-NMSC-062, ¶¶ 5-6.

**{28}** Consequently, the district court did not err in either of the cases before us. Pursuant to the single-larceny doctrine, Defendant Hendrix could be found guilty of only one larceny of livestock because he is alleged to have stolen multiple head of cattle from the same owner at the same time and place. In other words, he is accused of stealing the cattle in a single transaction. For similar reasons, Defendant Torres, who allegedly stole multiple head of cattle from the same owner on two separate days, can be found guilty of no more than two larcenies of livestock. *See id.* ¶ 9 ("[F]actual questions of intent must be decided by the jury unless the trial court can say under the circumstances that, as a matter of law, the act is either a separate crime or part of a broader scheme or plan.").

**CONCLUSION**

**{29}** Because we hold that the district court correctly determined the applicable unit of prosecution in both cases, we affirm its orders and remand for further proceedings consistent with this opinion.

**{30}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**